PAULA McKELVEY MYERS AND TRAVIS MYERS, BY HIS GUARDIAN AD LITEM, BARBARA G. FOLSOM, PLAINTIFFS-APPELLEES v. JERRY K. MYERS AND DAVID T. MYERS, DEFENDANTS-APPELLANTS

No. COA10-1008

(Filed 5 July 2011)

**1. Trusts— constructive trust—proceeds of retirement plans —consent order unambiguous**

The trial court did not err in a case involving the imposition of a constructive trust on decedent's death benefits by denying defendants' motion to dismiss. Based on the plain language of decedent's retirement plans and the clear language of a 1994 consent order, the trial court did not err in concluding that decedent's retirement plans' proceeds were "death benefits" as set forth in the consent order.

**2. Laches— no knowledge of grounds for claim—motion to dismiss—denial proper**

The trial court did not err in a case involving the imposition of a constructive trust on decedent's death benefits by denying defendant's motion to dismiss on the grounds of laches. Defendants failed to present any evidence that plaintiff had knowledge of the existence of the grounds for the claim.

**3. Trusts— constructive trust—imposition proper**

The trial court did not err in an action involving beneficiaries of decedent's death benefits by imposing a constructive trust upon the gross amounts plus interest that defendants received from decedent's retirement plans. There were circumstances making it inequitable for defendants to retain the proceeds against the claim of the beneficiary of the constructive trust.

Appeal by Defendants from order entered 22 April 2010 by Judge George A. Bedsworth in District Court, Forsyth County. Heard in the Court of Appeals 25 January 2011.

*Craige Brawley Liipfert & Walker LLP, by Susan J. Ryan, for Plaintiffs-Appellees.*

*Hinshaw & Jacobs, LLP, by Robert D. Hinshaw, for Defendants-Appellants.*

McGEE, Judge.

Paula McKelvey Myers (Paula) and Marvin Kermit Myers (Decedent) were married in 1991. The couple had one child together, Travis Myers (Travis). Decedent had two other sons from a previous marriage, Jerry K. Myers (Jerry) and David T. Myers (Tommy) (together, Defendants). Paula and Decedent divorced in 1995. A consent order was entered in District Court, Forsyth County, on 8 March 1994 (the 1994 consent order), concerning child support, custody, and other issues relating to Travis. In Paragraph 7 of the 1994 consent order, the trial court ordered the following:

That [Decedent] shall maintain his group life insurance coverage through his employment, and shall list the minor child, TRAVIS WILLIAM MYERS, as a beneficiary under any life insurance policies [Decedent] has through his employment. That at no time shall the minor child be listed as a beneficiary of less than thirty-three percent (33%) of any proceeds received under any life insurance pol-

icy of [Decedent] in the event of the death of [Decedent]. That the minor child shall further be listed as a beneficiary of any other death benefits to which [Decedent] is entitled through his employment, and at no time shall the minor child be listed as a beneficiary of less than thirty-three percent (33%) of any death benefits of [Decedent] through his employment.

Decedent died on 3 May 2008. When Decedent died, he had a life insurance policy through his employer, R.J. Reynolds Tobacco Company (RJR). Decedent was also a participant in the Reynolds American Retirement Plan (the PEP plan) and the Capital Investment Plan (the CIP plan) (together, the plans). Decedent never designated Travis as a beneficiary of his life insurance policy, nor of the plans. When Decedent died before retirement, the benefits from the plans became payable to the named beneficiaries. Jerry and Tommy were named as beneficiaries of Decedent's life insurance policy and of the CIP plan. There was no named beneficiary of the PEP plan, but in the event one was not designated at the time of Decedent's death, the beneficiary of Decedent's life insurance policy would become the beneficiary of the PEP plan. Thus, Jerry and Tommy received benefits from the plans. However, they directed the insurance carrier to establish a trust for Travis with one-third of the life insurance proceeds and named Jerry as the trustee.

The life insurance policy and the plans are governed by the Employee Retirement and Income Securities Act (ERISA). The proceeds of the plans totaled $399,822.73. Travis received none of the proceeds from the plans. Until Decedent's death, Paula never requested proof as to whether Travis was a named beneficiary of Decedent's life insurance policy, or of the plans.

The record on appeal contains a consent order entered 17 November 2009 (the 2009 consent order), in which the trial court made a finding of fact that Paula had filed motions to (1) show cause, (2) substitute a party, and (3) join parties. The 2009 consent order further stated that, in an order entered 1 July 2009, the trial court granted some of Paula's requested relief by "[s]ubstitut[ing] Jerry K. Myers, in his capacity as personal representative of the estate of Marvin Kermit Myers, as the defendant in this action," but "[d]eclined to rule on [Paula's] motion to show cause and motion for joinder of Travis [] as plaintiff[,]" and "[d]enied [Paula's] motion for joinder of [Jerry] and [Tommy] as defendants." Subsequently, Paula filed a "Motion to Reconsider the Court's denial of [Paula's] motion to join Jerry and Tommy as defendants." We note that copies of those

motions and order referred to in the 2009 consent order are not specifically included in the record on appeal.

The 2009 consent order was entered in response to the motion to reconsider the denial of Paula's motion in the cause. The 2009 consent order "joined [Jerry and Tommy] as defendants in this action" and "joined [Travis] as a plaintiff in this action," represented by his appointed guardian ad litem, Barbara Folsom (together with Paula, Plaintiffs). The 2009 consent order dismissed Decedent's estate from the action, but retained jurisdiction over the estate for any purpose the trial court deemed necessary.

Plaintiffs filed a second motion in the cause on 22 December 2009 (the motion in the cause) and asked the trial court to enforce the 1994 consent order against Defendants. Plaintiffs sought thirty-three percent (33%) of the gross proceeds from the plans, plus interest, for Travis. Plaintiffs also asked that the proceeds be held in a constructive trust for Travis. Defendants filed a response to the motion in the cause on 26 January 2010, requesting that the motion in the cause be dismissed for failure to state a claim for relief.

The trial court entered an order determining Plaintiffs' motion in the cause and Defendants' motion to dismiss on 22 April 2010 (the 2010 order), concluding that the "language ' . . . death benefits to which [Decedent] is entitled through his employment,' is clear and unambiguous, and . . . did not create a latent ambiguity." The 2010 order further concluded that, though ERISA dictated that the benefits of the plans be paid to the named beneficiaries, once the benefits were paid out, the plans were no longer governed by ERISA but were subject to the 1994 consent order. Subsequently, the trial court ordered that a constructive trust be imposed for the benefit of Travis on a one-third interest of the total proceeds of the plans, and denied Defendants' motion to dismiss. Defendants appeal.

Defendants argue that the trial court erred in denying their motion to dismiss asserting the affirmative defense of laches, because Paula did not attempt to define "death benefits" before Decedent's death. Defendants also argue that the imposition of a constructive trust on the gross amounts received by Defendants was error and was not supported by evidence, findings of fact, conclusions of law, or existing law.

When the trial court sits without a jury . . . "the standard of review on appeal is whether there was competent evidence to support

the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." The trial court's conclusions of law are reviewed de novo.

*Shepard v. Bonita Vista Properties, L.P.*, 191 N.C. App. 614, 616, 66 664 S.E.2d 388, 390 (2008) (citations omitted).

## I. Ambiguity

[1] Defendants first argue that the trial court erred in "finding that the term 'death benefits' as used in [the 1994 consent order] included the proceeds from" the plans. Defendants also contend that the trial court erred by concluding the term "death benefits" was clear and unambiguous and did not create a latent ambiguity, and should have been construed in favor of Defendants. Defendants argue that, because Decedent was not represented in the process of entering the 1994 consent order, any ambiguity should be construed against Paula, the drafting party.

Our Court has previously held that, "as a consent order is merely a court-approved contract, it is 'subject to the rules of contract interpretation.' " *Reaves v. Hayes*, 174 N.C. App. 341, 345, 620 S.E.2d 726, 729 (2005) (citation omitted). Our Court has also stated that, when a question arises regarding contract interpretation, " 'whether . . . the language of a contract is ambiguous or unambiguous is a question for the court to determine[.]' " *Anderson v. Anderson*, 145 N.C. App. 453, 458, 550 S.E.2d 266, 269 (2001) (citation omitted). "In making this determination, 'words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible[.]' " *Id.* at 458, 550 S.E.2d at 269-70 (citation omitted). "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Register v. White*, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004).

> An ambiguity exists where the " 'language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties.' " Stated another way, an agreement is ambiguous if the " 'writing leaves it uncertain as to what the agreement was [.]' "

*Holshouser v. Shaner Hotel Grp. Props. One*, 134 N.C. App. 391, 397, 518 S.E.2d 17, 23 (1999), *aff'd*, 351 N.C. 330, 524 S.E.2d 568 (2000) (citations omitted).

Even if a term "seem[s] clear and unambiguous, a latent ambiguity exists if [its] meaning is less than certain when viewed in the context

of all the surrounding circumstances." *Alchemy Communications Corp. v. Preston Dev. Co.*, 148 N.C. App. 219, 224, 558 S.E.2d 231, 234 (2002). "A latent ambiguity may arise where the words of a written agreement are plain, but by reason of extraneous facts the definite and certain application of those words is found impracticable." *Miller v. Green*, 183 N.C. 652, 654, 112 S.E. 417, 418 (1922). Our review of a trial court's determination of whether a contract is ambiguous is *de novo*. *Holshouser*, 134 N.C. App. at 397, 518 S.E.2d at 23.

Defendants, quoting *Fox v. Office of Personnel Management*, 100 F.3d 141, 144 (Fed. Cir. 1996), contend that the term "death benefits" is ambiguous because "[a]t least one court, albeit in a different context, has held the term 'death benefits' to be 'fatally ambiguous[,'] as it could refer to a lump sum payment or a series of payments over time." However, Defendants do not explain the context of the "fatal" ambiguity in *Fox*, nor do they explain how an opinion from the Court of Appeals for the Federal Circuit is relevant to our discussion of the 1994 consent order. *See Soderlund v. Kuch*, 143 N.C. App. 361, 370, 546 S.E.2d 632, 638 (2001) ("recogniz[ing] that 'with the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State' " (citation omitted)).

Defendants further argue that the term "death benefits" is ambiguous because it was not defined in the 1994 consent order, and "[n]either North Carolina case law, nor any other state's case law, has defined the term[.]" Defendants argue that, because of the alleged ambiguity, Paula or the attorney who drafted the 1994 consent order should have been called to testify concerning the meaning of "death benefits[.]" Defendants allege that the failure of Paula and her attorney "to testify suggests that their testimony would be adverse to [Plaintiffs'] interests." We are not persuaded by Defendants' argument as to Plaintiffs' reasons for not presenting testimony.

Finally, Defendants argue that "even assuming that a common definition of 'death benefits' exists at all, it is ambiguous whether or not the payments from [the PEP plan] at issue are considered death benefits within the meaning of the term." We disagree. In the present case, the 1994 consent order contains the following provision:

That [Decedent] shall maintain his group life insurance coverage through his employment, and shall list [Travis] as a beneficiary under any life insurance policies [Decedent] has through his employment. That at no time shall the minor child be listed as a

beneficiary of less than thirty-three percent (33%) of any proceeds received under any life insurance policy of [Decedent] in the event of the death of [Decedent]. That the minor child *shall further be listed* as a beneficiary of *any other death benefits to which [Decedent] is entitled through his employment,* and at no time shall the minor child be listed as a beneficiary of less than thirty-three percent (33%) of any death benefits of [Decedent] through his employment.

(Emphasis added). Thus, the 1994 consent order makes a clear distinction between the life insurance policy and "any other death benefits to which [Decedent] is entitled through his employment[.]" The 1994 consent order also lists "any other death benefits" in a separate sentence and specifies that Travis shall be listed as beneficiary of not less than thirty-three percent of both the life insurance proceeds and "any other death benefits."

We note that, in arguing the term "death benefits" is ambiguous, Defendants do not suggest to this Court what meaning the term might have other than that posited by Plaintiffs. Defendants merely contend that the "death benefit" provisions of the plans are not to be considered "death benefits" under the 1994 consent order. However, pursuant to the 1994 consent order, Decedent was required to make Travis a beneficiary of both Decedent's life insurance policy and "any other death benefits to which [Decedent was] entitled through his employment." Reading the term "death benefits" in the context of the 1994 consent order, we are not persuaded that the " 'writing leaves it uncertain as to what the agreement was[.]' " *Holshouser,* 134 N.C. App. at 397, 518 S.E.2d at 23 (citations omitted). Therefore, the term is not ambiguous and the trial court did not err in so concluding.

The summary plan description of the PEP plan contains the following provision, titled "Death Benefits (Prior to Receipt of Payment)[,]" which includes the following language:

If you are vested and you die before receiving any benefits, your benefit is payable to your spouse or, if you are not married, to your named beneficiary.

The PEP plan also contains the following provision: "If you are not married, your beneficiary is the same as is designated under your Company-paid life insurance plan unless you designate another person or entity as your beneficiary for this Plan." Decedent did not name anyone a beneficiary for the PEP plan; thus, the PEP plan paid his death benefits to Defendants as the named beneficiaries of his

life-insurance policy. We also note that the PEP plan "Pre-retirement death benefit application[,]" completed by Jerry, contains the following language:

> I hereby certify that I am the beneficiary designated by the above-named Participant to receive part or all benefits due under the Plan in the event of his/her death. Absent any specific designation under the Plan, the designated beneficiary is the same as named for purposes of Company-provided life insurance. I understand that the only form of payment available for this death benefit is a lump-sum payment in full discharge of all entitlements under the Plan[.]

In light of the plain language of Decedent's retirement plans and the clear language of the 1994 consent order, we find no reasonable interpretation of the phrase "any other death benefits to which [Decedent] is entitled through his employment[,]" which would not include the plans' proceeds. We therefore hold that the trial court did not err in concluding that the plans' proceeds were "death benefits" as set forth in the 1994 consent order.

Defendants argue that any ambiguity in the term "death benefits" should be construed against Paula because she was represented by an attorney who drafted the 1994 consent order. Our Court has held that "[w]hen the language in a contract is ambiguous, we view the practical result of the restriction by 'construing the restriction strictly against its draftsman.'" *Electrical South, Inc. v. Lewis*, 96 N.C. App. 160, 167, 385 S.E.2d 352, 356 (1989) (citation omitted). Defendants contend that since Decedent was not represented by an attorney at the time the 1994 consent order was drafted, and because Paula's attorney drafted the order, this rule of contract interpretation is applicable. However, this rule is only applicable when there is an actual instance of ambiguity. As we have already noted, there is no latent ambiguity in the term "death benefits." Therefore, this rule of contract interpretation does not apply.

## II. Laches

[2] Defendants argue that the trial court erred in denying their motion to dismiss on the grounds of the affirmative defense of laches.

> To establish the affirmative defense of laches, our case law recognizes that 1) the doctrine applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of each case;

however, the mere passage of time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*MMR Holdings, LLC v. City of Charlotte*, 148 N.C. App. 208, 209-10, 558 S.E.2d 197, 198 (2001). "[T]he party who pleads [laches] has the burden of proof." *Taylor v. N.C. Dept. of Transportation*, 86 N.C. App. 299, 304, 357 S.E.2d 439, 441 (1987) (citation omitted). Defendants argue that, because Paula never attempted to clarify the meaning of "death benefits" during Decedent's life and because Decedent's death resulted in a change of condition for Defendants, the defense of laches should bar Plaintiffs' claim. We disagree.

The defense of laches will only bar a claim "when the claimant knew of the existence of the grounds for the claim." *MMR Holdings LLC*, 148 N.C. App. at 210, 558 S.E.2d at 198. In the present case, no evidence was presented that showed Paula had any knowledge of, nor could have had any knowledge of, whether Decedent had complied with the 1994 consent order by naming Travis as a beneficiary, as she had no access to check the beneficiary designation. Because Defendants failed to present any evidence that Paula had knowledge of "the existence of the grounds for the claim[,]" they have not satisfied their burden of proof and the trial court did not err in denying Defendants' motion to dismiss. *Id.*

### III. Imposition of Constructive Trust

[3] Defendants next argue that the trial court erred in imposing a constructive trust upon the gross amounts plus interest that Defendants received from the plans because Defendants claim that there was no fraud on their part. Defendants contend that fraud on the part of the possessor of the object of the trust is a requirement to the imposition of constructive trusts. We disagree.

Our Supreme Court has held that fraud need not always be present to impose a constructive trust. *Roper v. Edwards*, 323 N.C. 461, 465, 373 S.E.2d 423, 425 (1988).

A constructive trust is imposed "to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or *some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust*."

*Id.* (citation omitted, emphasis in original). " 'Inequitable conduct short of actual fraud will give rise to a constructive trust where retention of the property by the holder of the legal title would result in his unjust enrichment.' " *Id.* (citation omitted). "Fraud need not be shown if legal title has been obtained in violation of some duty owed to the one equitably entitled." *Id.* (citation omitted).

Furthermore, a constructive trust may be imposed against anyone who "in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." *Electric Co. v. Construction Co.*, 267 N.C. 714, 719, 148 S.E.2d 856, 860 (1966). All things considered, "if imposition of a constructive trust is appropriate on the facts, we need not determine whether actual fraud has been established." *Roper*, 323 N.C. at 465, 373 S.E.2d at 425 (1988).

In the present case, Plaintiffs concede there was no fraud on the part of Defendants. However, we find there are " 'other circumstances making it inequitable for [Defendants] to retain [the proceeds] against the claim of the beneficiary of the constructive trust.' " *Id.* (emphasis omitted). Decedent's failure to list Travis as a beneficiary under the plans, as required by the 1994 consent order, was inequitable conduct which has unjustly enriched Jerry and Tommy. Because Jerry and Tommy are in possession of Travis' share of the death benefits as a result of Decedent's inequitable failure to comply with the 1994 consent order, the trial court did not err in imposing a constructive trust in this case.

We affirm the order of the trial court.

Affirmed.

Judges BRYANT and BEASLEY concur.