IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-428

No. COA20-590

Filed 17 August 2021

Forsyth County, No. 15 CVD 6511

MICHELLE PORTMAN WALTER, Plaintiff-Appellee,

v.

JAMES MILTON WALTER, JR., Defendant-Appellant.

Appeal by defendant from order entered 20 February 2020 by Judge Laurie Hutchins in District Court, Forsyth County. Heard in the Court of Appeals 27 April 2021.

*Morrow, Porter, Vermitsky & Taylor, PLLC, by John C. Vermitsky, for Plaintiff-Appellee.*

*Fox Rothschild LLP, by Michelle D. Connell, for Defendant-Appellant.*

STROUD, Chief Judge.

¶ 1        James Milton Walter, Jr., ("Father") appeals from a contempt order entered 20 February 2020 in which the trial court determined that Father had willfully violated a child-custody order and held Father in civil contempt. For the reasons discussed herein, we vacate.

I.        Background

¶ 2    Michelle Portman Walter ("Mother") and Father were married in 2000 and divorced in February 2016. The couple are the parents to two minor children during their marriage, "KLW" and "ELW."[1]

¶ 3    On 22 October 2015, Mother filed a complaint asserting claims for child custody, child support, post-separation support, alimony, attorney's fees, equitable distribution, and absolute divorce. Father filed an answer and asserted counterclaims for child custody, child support, and equitable distribution on 28 December 2015. Mother replied and filed a motion for summary judgment divorce. Absolute divorce was granted on 1 February 2016.

¶ 4    On 11 March 2016, the district court entered a Consent Order for Child Custody and Child Support (the "Consent Order"). The Consent Order awarded joint legal custody to the parties, with primary legal custody to Father and secondary legal custody to Mother. The Consent Order does not expressly award "physical custody" to either party and defines "joint legal custody" as follows:[2]

> [J]oint legal custody shall mean that the parties shall
> discuss and mutually decide upon all major educational,
> religious, and medical decisions affecting or involving their

---

[1] Pseudonyms are used throughout the opinion to protect the identity of the juveniles and for ease of reading.

[2] In the Contempt Order, the trial court interpreted the Consent Order as providing "joint legal custody of the children between [M]other and [F]ather and primary physical custody for the [Father] . . . with the [M]other exercising secondary physical custody." This is a reasonable description of the Consent Order but is not entirely accurate, as the Consent Order did not expressly award "physical custody" to either party.

minor children. Further, the minor children of the parties shall reside with [Father] and spend time with [Mother] as the parties mutually agree. In the event the parties cannot agree, the schedule shall be as follows

a. The minor children shall reside with [Father], but spend time with [Mother] based on a two week schedule.

b. Beginning on January__, 2016 [Mother] shall have the minor children on Tuesday or Thursday evenings for dinner from 5:30 p.m. until 7:30 p.m. [Mother] shall also have the minor children from Friday at 5:30 p.m. until Sunday at 5:30 p.m. The following week, [Mother] shall have the minor children for dinner on Thursday for dinner from 5:30 p.m. until 7:30 p.m. This two week schedule shall continue to repeat itself. The intent of this schedule is that [Mother] not have a seven day period without seeing the children, *absent vacations.* Thus if [Father] has the children for a weekend, [Mother] shall have the minor children the following Tuesday and Thursday for dinner.

c. During the minor children's weekday visits with [Mother], she shall ensure that they work on their homework to provide for an orderly evening and bedtime at [Father's].

d. Any other time agreed to by the parties;

e. All exchanges shall occur with [Mother] retrieving and retuning the minor children to [Father] at the former marital residence, unless alternate arrangements are made.

f. In the event changes are needed to the regular visitation schedule provided for herein, arrangements will be made at least 48 hours in advance via e-mail or text and additional time or

> changes will be as mutually agreed upon. Both
> parties agree that neither the regular time sharing
> schedule nor the holiday time sharing schedule
> provided for herein will interfere significantly with
> the children's school attendance.

The Consent Order then sets out detailed provisions for holiday and summer

visitation, which

> *shall supersede and take priority over the regular physical*
> *custody schedule of the said minor children as set out*
> *hereinabove.* By mutual agreement, [Mother] and [Father]
> may alter these specific holiday dates, time periods, and
> other restrictions, and both parties agree to work together
> to arrange appropriate compromises when applicable
> regarding the following summer and holiday periods and
> with regard to the children attending summer camp and
> the like.

The Consent Order specifically sets out the schedule for Christmas, Thanksgiving,

Spring Break, and summer vacation. As relevant to this appeal, the Consent Order

states the following regarding summer vacation:

> (e) Beginning in 2016, the [Father] shall have
> summer vacation with the minor children for *at least*
> *two non-consecutive weeks during each summer*
> *(school) vacation period of the minor children*, as
> said period is determined by the school the children
> are attending; however the parties recognize, in the
> event [Father] travels out of town with the minor
> children, he may need to have two consecutive weeks
> for the trip. *The [Father] shall give the [Mother]*
> *adequate, written notice of his proposed period of*
> *summer vacation for the upcoming summer period,*
> *(within 5 days of making the plans) including where*
> *he is traveling with the minor children. Beginning*

> *in 2016, the [Mother] shall have summer vacation with the minor children for at least one week during each summer (school) vacation period of the minor children, as said period is determined by the school the children are attending. The [Mother] shall give the [Father] written notice on or before April 1st of each year of her proposed period of summer vacation for the upcoming summer period, so as to allow [Father] to plan the minor children's activities.*

(Emphasis added.)

On 30 August 2019, Mother filed a motion to show cause why Father should not be held in both civil and criminal contempt of court for an alleged violation of the Consent Order. Mother alleged that Father had "willfully failed, refused and neglected to abide by the terms and provisions of [the Consent Order] . . . in that the [Father] ha[d] exercised [an] extra vacation week without the [Mother's] agreement to changing the visitation schedule" after he had already "exercised his two non-consecutive weeks [with the children during their summer vacation]." The district court entered a show-cause order on the same day.

The hearing on civil contempt was held on 21 January 2020.[3] On 20 February 2020, the district court entered an Order for Contempt (the "Contempt Order") finding Father in civil contempt of the Consent Order. The Contempt Order states the following:

---

[3] At the January 2020 hearing, Mother stated that she was moving forward only on civil, not criminal, contempt.

3. Defendant/Father has willfully violated the [Consent] [O]rder by his own unilateral decision in taking the children for an extra week of vacation against the wishes of Plaintiff/Mother.

4. As a result of this willful violation the Defendant/Father should be incarcerated for 24 hours to ensure compliance with the [Consent] [O]rder. This sentence shall be suspended so long as the [Father] pays $1,500 in attorney's fees to attorney for [Mother] and arranges for make up visitation for Plaintiff/Mother from Friday October 9, 2020 at 5:30 to Sunday October 11, 2020 at 5:30 PM.

5. It is, therefore, ORDERED, ADJUDGED AND DECREED that Defendant/Father shall be incarcerated for 24 hours to ensure compliance with the [Consent] [O]rder. This sentence shall be suspended so long as the [Father] pays $1,500 in attorney's fees to attorney for [Mother] within 24 hours of his attorney receiving notice that the order has be[en] signed and arranges for make up visitation for Plaintiff/Mother Friday October 9, 2020 at 5:30 to Sunday October 11, 2020 at 5:30 PM.

Father filed a timely notice of appeal of the Contempt Order on 25 February 2020. This appeal is properly before this Court under N.C. Gen. Stat. § 7A-27(b) (2019).

## II.  Discussion

### A.  Interpretation of Consent Order

Father first argues that the Consent Order's provisions regarding summer vacation are ambiguous and therefore Father could not have willfully violated the Contempt Order as Mother claims. As a result, according to Father, the trial court erred by finding him in civil contempt. We agree that the Consent Order is

ambiguous. Father's interpretation of the Consent Order is at least as reasonable as Mother's proposed interpretation. The Consent Order is not a model of clarity. Because the Consent Order is ambiguous and Father acted in accordance with his reasonable interpretation of the Consent Order, we hold that Father did not willfully violate the terms of the Consent Order.

¶ 8    We review the trial court's conclusions of law in a civil contempt order *de novo*. *Tucker v. Tucker*, 197 N.C. App. 592, 594, 679 S.E.2d 141, 143 (2009). Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the district court. *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). This Court also reviews a trial court's determination of ambiguity of provisions of a consent order *de novo*:

> Our Court has previously held that, as a consent order is merely a court-approved contract, it is subject to the rules of contract interpretation. Our Court has also stated that, when a question arises regarding contract interpretation, whether . . . the language of a contract is ambiguous or unambiguous is a question for the court to determine. In making this determination, words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible. An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations.

*Myers v. Myers*, 213 N.C. App. 171, 175, 714 S.E.2d 194, 198 (2011) (internal citations and quotation marks omitted).

¶ 9        Where a consent order is "fairly and reasonably susceptible" to the interpretations proposed by both parties, it is ambiguous. *See id.* at 175, 714 S.E.2d at 198 ("An ambiguity exists where the 'language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties.' Stated another way, an agreement is ambiguous if the 'writing leaves it uncertain as to what the agreement was[.]'") (internal quotation marks omitted) (quoting *Holshouser v. Shaner Hotel Grp. Properties One Ltd. P'ship*, 134 N.C. App. 391, 397, 518 S.E.2d 17, 23 (1999)).

¶ 10        Section 5A-21 of our General Statutes permits the trial court to hold a party in civil contempt if the "noncompliance by the person to whom the [contempt] order is directed is *willful*[.]" N.C. Gen. Stat. § 5A-21(a)(2a) (2019) (emphasis added). "With respect to contempt, willfulness connotes knowledge of, and stubborn resistance to, a court order." *Blevins v. Welch*, 137 N.C. App. 98, 103, 527 S.E.2d 667, 671 (2000) (citation omitted). In other words, a party's noncompliance is willful only if it is shown by the movant that the party's noncompliance was committed with knowledge of, and stubborn resistance to, the court's directive. *See id.*; *see also Forte v. Forte*, 65 N.C. App. 615, 616, 309 S.E.2d 729, 730 (1983) (citations omitted) ("Wilfulness in matters of this kind involves more than deliberation or conscious choice; it also imports a bad faith disregard for authority and the law.").

¶ 11        Here, Mother's contempt motion alleged that Father had "willfully failed, refused and neglected to abide by the terms and provisions of [the Consent Order] . . . in that the [Father] ha[d] exercised [an] extra vacation week without the [Mother's] agreement to changing the visitation schedule" after he had already "exercised his two non-consecutive weeks [with the children during their summer vacation]."[4]  At the contempt hearing, Father, the sole testifying witness, stated that during the children's summer vacation in 2019, he exercised two consecutive weeks with the minor children in Europe and an additional non-consecutive third week of vacation with the children in Nebraska.  Father provided Mother with written notice of these summer trips on 22 May 2019.  Nonetheless, the trial court concluded that Father had willfully violated the Consent Order by taking the children for an extra week of summer vacation against the wishes of Mother.  This was error.

¶ 12        When interpreting an agreement, the court must give the words used "their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible . . . ."  *Piedmont Bank & Tr. Co. v. Stevenson*, 79 N.C. App. 236, 241, 339

---

[4] Although Mother argues on appeal that Father had "engaged in multiple violations" of the Consent Order, Mother's motion for contempt and the Contempt Order itself identify only one violation:  Father's third week of summer visitation in 2019.  As Mother did not seek to hold Father in contempt for any other alleged violations of the Consent Order, we do not consider her arguments regarding Father's "past history of violations of the [Consent] Order" since this was not presented to the trial court.

S.E.2d 49, 52, *aff'd*, 317 N.C. 330, 344 S.E.2d 788 (1986); *Anderson v. Anderson*, 145 N.C. App. 453, 458, 550 S.E.2d 266, 269-70 (2001).

¶ 13    As noted above, physical custody of the minor children during summer vacation is governed by Paragraph 2 of the Consent Order, which supersedes and takes priority over the regular physical custody schedule set out in the Consent Order. Paragraph 2 governs summer visitation "[n]otwithstanding [any] contrary provisions" in the Consent Order. Subsection 2(e) provides Father with custody of the minor children for "*at least* two non-consecutive weeks during each summer (school) vacation period" so long as Father provides "adequate, written notice of his proposed period of summer vacation for the upcoming summer period, (within 5 days of making the plans) including where he is traveling with the minor children." (Emphasis added.) The Consent Order further provides that "in the event [Father] travels out of town with the minor children," he may retain physical custody of the children for "two consecutive weeks for the trip[.]" In addition, the Consent Order states that "both parties agree to work together to arrange appropriate compromises when applicable regarding the . . . summer and holiday periods and with regard to the children attending summer camp and the like[.]"

¶ 14    Father asserts that a "reasonable interpretation of the [summer vacation] provision is that a party cannot have less than the guaranteed minimum time, but he/she may have more by giving timely written notice of his/her 'proposed period of

summer vacation for the upcoming summer period.' " Father's interpretation of the Consent Order is based in part upon interpreting the words "at least" to mean "no less than." In other words, Father contends that he is guaranteed *no less than* two non-consecutive weeks with the children during summer vacation, and his weeks must be non-consecutive unless he and the children travel out of the country, and that he may also provide notice of additional summer vacation time if it is non-consecutive to the two other weeks and does not interfere with Mother's designated week with the children.

¶ 15 On the other hand, Mother contends there is "only one reasonable interpretation of the summer vacation provisions" of the Consent Order. Her interpretation is based upon the words "at least," as well, but she interprets this language to mean "no more than." Mother argues that "[e]ach party is *limited* to two weeks and one week vacation respectively, upon proper notice absent the consent of the other party." (Emphasis added.) She argues this interpretation is supported by the use of the words "at least," specifically that the "terms 'at least' used within this provision represent a term of limitation over the [Father's] vacation." Thus, Mother claims that the "only reasonable interpretation" is that Father can have *no more than* two weeks unless she "agrees to extra time but cannot be limited to less than two weeks." Because both parties are allowed "at least" a certain period of summer vacation, Mother contends that the usual interpretation of the words "at least" would

lead to the absurd result of a " 'race to notice' vacation time where either party could designate essentially the entire summer as vacation by January 1ˢᵗ of each year." Mother posits that the ability to designate the entire summer as vacation time is contrary to the overall intent of the Consent Order for the parties to share joint custody of the children.

¶ 16 Had Father attempted to designate the entire summer as his vacation time, except for Mother's designated week, based upon the provision granting him "at least" two weeks of summer vacation custody, it may be easier to consider his interpretation of the summer-visitation provisions unreasonable, if not entirely wrong, since taking the entire summer would require Father to claim more than two *consecutive* weeks. But Father's interpretation of the words "at least" as meaning "no less than" is based upon the "usual and ordinary" meaning of the words and is not unreasonable. In the factual context of this case, Father's unchallenged testimony indicated that he and the children had normally taken a vacation to Europe each year, and they went to France and Belgium during the two-week vacation in 2019. In addition, he and the children had normally visited his family in Nebraska each year, and this was the purpose for exercising a third week with the children during the summer of 2019. Again, Father did not attempt to exercise custody over the children for the entire summer, and his interpretation of the summer-visitation provisions is reasonable. Likewise, Mother's interpretation of the summer-visitation provisions as

guaranteeing her one week and Father two weeks, but no more unless agreed otherwise, is also reasonable in the context of the entire Consent Order, even though her interpretation is based on using the words "at least" as a term of limitation. This is all to say that the provisions of the Consent Order regarding summer visitation are ambiguous.

¶ 17 Where terms of an agreement are ambiguous, the trial court may consider parol evidence to explain the agreement:

> Our courts, in determining the intent of the parties, look first to the language of the agreement. *See Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) ("If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract"). If a term is ambiguous, parol evidence may be admitted to explain the term. *See Vestal v. Vestal*, 49 N.C. App. 263, 266-67, 271 S.E.2d 306, 309 (1980) ("Although parol evidence may not be allowed to vary, add to, or contradict an integrated written instrument . . . an ambiguous term may be explained or construed with the aid of parol evidence"). A closer examination of the contested provisions of the agreement is therefore warranted to determine if the intent of the parties can be ascertained from the plain language, or if parol evidence could properly be admitted to explain ambiguous terms.

*Jackson v. Jackson*, 169 N.C. App. 46, 54, 610 S.E.2d 731, 737, *rev'd,* 360 N.C. 56, 620 S.E.2d 862 (2005) (adopting dissenting opinion of Hunter, J., stating that the intent of the parties can be determined by the plain language of the agreement, and any

ambiguities creating questions of fact may be properly resolved with the use of parol evidence).

¶ 18    But here, neither party presented any parol evidence to explain or construe their respective interpretations of the terms of the Consent Order. Mother did not testify at the contempt hearing, and Father testified to his understanding of the summer-visitation provisions as allowing him "at least"—meaning "no less than"—two weeks and that since he gave Mother the required notice of his summer plans, which were not in conflict with her week of summer visitation or the children's other summer plans, Father believed he complied with the Consent Order. While Father acknowledged that Mother had objected to the third week of summer vacation, he (reasonably) interpreted the Consent Order as entitling him to the third week of vacation so long as he gave proper notice to Mother. Again, Father's interpretation of the Consent Order was at least as reasonable as Mother's interpretation, and Mother presented no parol evidence to support her interpretation beyond the four corners of the document. In the end, the summer-visitation provisions in the Consent Order are ambiguous, and Father's interpretation of those terms was not unreasonable.

¶ 19    As the Consent Order is ambiguous, the trial court erred by holding Father in civil contempt as he did not willfully violate the Consent Order:

    With respect to contempt, willfulness connotes knowledge

> of, and stubborn resistance to, a court order. If the prior order is ambiguous such that a defendant could not understand his respective rights and obligations under that order, he cannot be said to have "knowledge" of that order for purposes of contempt proceedings. Due to the ambiguity of the 1983 judgment here, we reverse the trial court's adjudication of contempt.

*Blevins*, 137 N.C. App. at 103, 527 S.E.2d at 671 (internal citations omitted). Father's uncontested testimony at the contempt hearing demonstrated his genuine, reasonable belief that the summer-visitation provisions in the Consent Order did not require the parties to mutually agree on their proposed summer schedules. And Mother failed to present any evidence suggesting that Father's alleged noncompliance was committed with knowledge of, and stubborn resistance to, the directives set out in the Consent Order.[5] *See id.* at 103, 527 S.E.2d at 671. In short, because Father acted upon his reasonable interpretation of the ambiguous provisions of the Consent Order, we hold that the trial court erred by concluding that Father had willfully violated the Consent Order.

¶ 20    Father also argues on appeal that even if he was not entitled to exercise a third week of visitation under the Consent Order, the trial court erred by holding him in civil contempt because he was in compliance with the Consent Order *before* Mother

---

[5] Indeed, Mother acknowledges that Father "expressed a belief that the [Consent] Order allowed him to engage in" the very behavior that Mother alleged to be in noncompliance with the same.

had filed her motion for contempt. Because his alleged violation was based on a single incident in the past, Father contends the trial court could only find him in criminal, not civil, contempt. However, based upon our holding that the Consent Order provisions regarding summer visitation are ambiguous, we need not and do not address this argument.

## B.     Attorney's Fees

¶ 21     Father also argues that the trial court erred by awarding attorney's fees. We agree.

¶ 22     Although we have determined the trial court erred by holding Father in civil contempt, this holding does not automatically eliminate the issue of attorney's fees. In some limited circumstances, a party who has filed a contempt motion may recover attorney's fees even where the alleged contemnor cannot be held in contempt at the time of the hearing. In *Ruth v. Ruth*, this Court addressed an award of attorney's fees to a father who sought to hold the mother in contempt for failure to return the children after visitation. *Ruth v. Ruth*, 158 N.C. App. 123, 579 S.E.2d 909 (2003). After the father had filed the motion for contempt, the mother returned the children to the father. *Id.* at 125, 579 S.E.2d at 911. Because the mother had come into compliance with the court's order before the hearing, this Court held that the "district court was without authority to adjudge [the mother] 'to be in willful civil contempt' or to commit her to the custody of the sheriff, even for a suspended sentence, and

those portions of the order must be vacated." *Id.* at 126, 579 S.E.2d at 912. However, this Court affirmed the award of attorney's fees to the father because the mother did not come into compliance until *after* the contempt motion was filed:

> As a general rule, attorney's fees in a civil contempt action are not available unless the moving party prevails. Nonetheless, in the limited situation where contempt fails because the alleged contemnor complies with the previous orders after the motion to show cause is issued and prior to the contempt hearing, an award of attorney's fees is proper.
>
> Therefore, that portion of the order requiring plaintiff to pay defendant's North Carolina attorney's fees in the amount of $1,425 is affirmed.

*Id.* at 127, 579 S.E.2d at 912 (internal citation omitted) (quoting another source). The "limited situation" presented in *Ruth* does not appear and is not applicable in this case. Even if Father's exercise of the third week of visitation had violated the Consent Order, that week of visitation was the sole alleged violation of the Consent Order, and it occurred *before* Mother filed her motion for contempt. There is no legal basis for an award of attorney's fees to Mother in this situation, and, therefore, we vacate the Contempt Order in its entirety.

## III. Conclusion

For the foregoing reasons, we vacate the Contempt Order entered 20 February 2020.

VACATED.

Judges TYSON and ZACHARY concur.