IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-428

 No. COA20-590

 Filed 17 August 2021

 Forsyth County, No. 15 CVD 6511

 MICHELLE PORTMAN WALTER, Plaintiff-Appellee,

 v.

 JAMES MILTON WALTER, JR., Defendant-Appellant.

 Appeal by defendant from order entered 20 February 2020 by Judge Laurie

 Hutchins in District Court, Forsyth County. Heard in the Court of Appeals

 27 April 2021.

 Morrow, Porter, Vermitsky & Taylor, PLLC, by John C. Vermitsky, for Plaintiff-
 Appellee.

 Fox Rothschild LLP, by Michelle D. Connell, for Defendant-Appellant.

 STROUD, Chief Judge.

¶1 James Milton Walter, Jr., (“Father”) appeals from a contempt order entered

 20 February 2020 in which the trial court determined that Father had willfully

 violated a child-custody order and held Father in civil contempt. For the reasons

 discussed herein, we vacate.

 I. Background
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

¶2 Michelle Portman Walter (“Mother”) and Father were married in 2000 and

 divorced in February 2016. The couple are the parents to two minor children during

 their marriage, “KLW” and “ELW.”1

¶3 On 22 October 2015, Mother filed a complaint asserting claims for child

 custody, child support, post-separation support, alimony, attorney’s fees, equitable

 distribution, and absolute divorce. Father filed an answer and asserted

 counterclaims for child custody, child support, and equitable distribution on

 28 December 2015. Mother replied and filed a motion for summary judgment divorce.

 Absolute divorce was granted on 1 February 2016.

¶4 On 11 March 2016, the district court entered a Consent Order for Child

 Custody and Child Support (the “Consent Order”). The Consent Order awarded joint

 legal custody to the parties, with primary legal custody to Father and secondary legal

 custody to Mother. The Consent Order does not expressly award “physical custody”

 to either party and defines “joint legal custody” as follows:2

 [J]oint legal custody shall mean that the parties shall
 discuss and mutually decide upon all major educational,
 religious, and medical decisions affecting or involving their

 1 Pseudonyms are used throughout the opinion to protect the identity of the juveniles and for

 ease of reading.

 2 In the Contempt Order, the trial court interpreted the Consent Order as providing “joint

 legal custody of the children between [M]other and [F]ather and primary physical custody for
 the [Father] . . . with the [M]other exercising secondary physical custody.” This is a
 reasonable description of the Consent Order but is not entirely accurate, as the Consent
 Order did not expressly award “physical custody” to either party.
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

minor children. Further, the minor children of the parties
shall reside with [Father] and spend time with [Mother] as
the parties mutually agree. In the event the parties cannot
agree, the schedule shall be as follows

 a. The minor children shall reside with [Father], but
 spend time with [Mother] based on a two week
 schedule.

 b. Beginning on January__, 2016 [Mother] shall
 have the minor children on Tuesday or Thursday
 evenings for dinner from 5:30 p.m. until 7:30 p.m.
 [Mother] shall also have the minor children from
 Friday at 5:30 p.m. until Sunday at 5:30 p.m. The
 following week, [Mother] shall have the minor
 children for dinner on Thursday for dinner from 5:30
 p.m. until 7:30 p.m. This two week schedule shall
 continue to repeat itself. The intent of this schedule
 is that [Mother] not have a seven day period without
 seeing the children, absent vacations. Thus if
 [Father] has the children for a weekend, [Mother]
 shall have the minor children the following Tuesday
 and Thursday for dinner.

 c. During the minor children's weekday visits with
 [Mother], she shall ensure that they work on their
 homework to provide for an orderly evening and
 bedtime at [Father’s].

 d. Any other time agreed to by the parties;

 e. All exchanges shall occur with [Mother] retrieving
 and retuning the minor children to [Father] at the
 former marital residence, unless alternate
 arrangements are made.

 f. In the event changes are needed to the regular
 visitation schedule provided for herein,
 arrangements will be made at least 48 hours in
 advance via e-mail or text and additional time or
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 changes will be as mutually agreed upon. Both
 parties agree that neither the regular time sharing
 schedule nor the holiday time sharing schedule
 provided for herein will interfere significantly with
 the children’s school attendance.

The Consent Order then sets out detailed provisions for holiday and summer

visitation, which

 shall supersede and take priority over the regular physical
 custody schedule of the said minor children as set out
 hereinabove. By mutual agreement, [Mother] and [Father]
 may alter these specific holiday dates, time periods, and
 other restrictions, and both parties agree to work together
 to arrange appropriate compromises when applicable
 regarding the following summer and holiday periods and
 with regard to the children attending summer camp and
 the like.

The Consent Order specifically sets out the schedule for Christmas, Thanksgiving,

Spring Break, and summer vacation. As relevant to this appeal, the Consent Order

states the following regarding summer vacation:

 (e) Beginning in 2016, the [Father] shall have
 summer vacation with the minor children for at least
 two non-consecutive weeks during each summer
 (school) vacation period of the minor children, as
 said period is determined by the school the children
 are attending; however the parties recognize, in the
 event [Father] travels out of town with the minor
 children, he may need to have two consecutive weeks
 for the trip. The [Father] shall give the [Mother]
 adequate, written notice of his proposed period of
 summer vacation for the upcoming summer period,
 (within 5 days of making the plans) including where
 he is traveling with the minor children. Beginning
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 in 2016, the [Mother] shall have summer vacation
 with the minor children for at least one week during
 each summer (school) vacation period of the minor
 children, as said period is determined by the school
 the children are attending. The [Mother] shall give
 the [Father] written notice on or before April 1st of
 each year of her proposed period of summer vacation
 for the upcoming summer period, so as to allow
 [Father] to plan the minor children’s activities.

 (Emphasis added.)

¶5 On 30 August 2019, Mother filed a motion to show cause why Father should

 not be held in both civil and criminal contempt of court for an alleged violation of the

 Consent Order. Mother alleged that Father had “willfully failed, refused and

 neglected to abide by the terms and provisions of [the Consent Order] . . . in that the

 [Father] ha[d] exercised [an] extra vacation week without the [Mother’s] agreement

 to changing the visitation schedule” after he had already “exercised his two non-

 consecutive weeks [with the children during their summer vacation].” The district

 court entered a show-cause order on the same day.

¶6 The hearing on civil contempt was held on 21 January 2020.3 On

 20 February 2020, the district court entered an Order for Contempt (the “Contempt

 Order”) finding Father in civil contempt of the Consent Order. The Contempt Order

 states the following:

 3 At the January 2020 hearing, Mother stated that she was moving forward only on civil, not

 criminal, contempt.
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 3. Defendant/Father has willfully violated the [Consent]
 [O]rder by his own unilateral decision in taking the
 children for an extra week of vacation against the wishes
 of Plaintiff/Mother.

 4. As a result of this willful violation the Defendant/Father
 should be incarcerated for 24 hours to ensure compliance
 with the [Consent] [O]rder. This sentence shall be
 suspended so long as the [Father] pays $1,500 in attorney’s
 fees to attorney for [Mother] and arranges for make up
 visitation for Plaintiff/Mother from Friday October 9, 2020
 at 5:30 to Sunday October 11, 2020 at 5:30 PM.

 5. It is, therefore, ORDERED, ADJUDGED AND
 DECREED that Defendant/Father shall be incarcerated
 for 24 hours to ensure compliance with the [Consent]
 [O]rder. This sentence shall be suspended so long as the
 [Father] pays $1,500 in attorney’s fees to attorney for
 [Mother] within 24 hours of his attorney receiving notice
 that the order has be[en] signed and arranges for make up
 visitation for Plaintiff/Mother Friday October 9, 2020 at
 5:30 to Sunday October 11, 2020 at 5:30 PM.

 Father filed a timely notice of appeal of the Contempt Order on 25 February 2020.

 This appeal is properly before this Court under N.C. Gen. Stat. § 7A-27(b) (2019).

 II. Discussion

 A. Interpretation of Consent Order

¶7 Father first argues that the Consent Order’s provisions regarding summer

 vacation are ambiguous and therefore Father could not have willfully violated the

 Contempt Order as Mother claims. As a result, according to Father, the trial court

 erred by finding him in civil contempt. We agree that the Consent Order is
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 ambiguous. Father’s interpretation of the Consent Order is at least as reasonable as

 Mother’s proposed interpretation. The Consent Order is not a model of clarity.

 Because the Consent Order is ambiguous and Father acted in accordance with his

 reasonable interpretation of the Consent Order, we hold that Father did not willfully

 violate the terms of the Consent Order.

¶8 We review the trial court’s conclusions of law in a civil contempt order de novo.

 Tucker v. Tucker, 197 N.C. App. 592, 594, 679 S.E.2d 141, 143 (2009). Under a de

 novo review, the court considers the matter anew and freely substitutes its own

 judgment for that of the district court. In re Appeal of Greens of Pine Glen Ltd., 356

 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). This Court also reviews a trial court’s

 determination of ambiguity of provisions of a consent order de novo:

 Our Court has previously held that, as a consent order is
 merely a court-approved contract, it is subject to the rules
 of contract interpretation. Our Court has also stated that,
 when a question arises regarding contract interpretation,
 whether . . . the language of a contract is ambiguous or
 unambiguous is a question for the court to determine. In
 making this determination, words are to be given their
 usual and ordinary meaning and all the terms of the
 agreement are to be reconciled if possible. An ambiguity
 exists in a contract when either the meaning of words or
 the effect of provisions is uncertain or capable of several
 reasonable interpretations.

 Myers v. Myers, 213 N.C. App. 171, 175, 714 S.E.2d 194, 198 (2011) (internal citations

 and quotation marks omitted).
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

¶9 Where a consent order is “fairly and reasonably susceptible” to the

 interpretations proposed by both parties, it is ambiguous. See id. at 175, 714 S.E.2d

 at 198 (“An ambiguity exists where the ‘language of a contract is fairly and reasonably

 susceptible to either of the constructions asserted by the parties.’ Stated another

 way, an agreement is ambiguous if the ‘writing leaves it uncertain as to what the

 agreement was[.]’ ”) (internal quotation marks omitted) (quoting Holshouser v.

 Shaner Hotel Grp. Properties One Ltd. P’ship, 134 N.C. App. 391, 397, 518 S.E.2d 17,

 23 (1999)).

¶ 10 Section 5A-21 of our General Statutes permits the trial court to hold a party in

 civil contempt if the “noncompliance by the person to whom the [contempt] order is

 directed is willful[.]” N.C. Gen. Stat. § 5A-21(a)(2a) (2019) (emphasis added). “With

 respect to contempt, willfulness connotes knowledge of, and stubborn resistance to, a

 court order.” Blevins v. Welch, 137 N.C. App. 98, 103, 527 S.E.2d 667, 671 (2000)

 (citation omitted). In other words, a party’s noncompliance is willful only if it is

 shown by the movant that the party’s noncompliance was committed with knowledge

 of, and stubborn resistance to, the court’s directive. See id.; see also Forte v. Forte, 65

 N.C. App. 615, 616, 309 S.E.2d 729, 730 (1983) (citations omitted) (“Wilfulness in

 matters of this kind involves more than deliberation or conscious choice; it also

 imports a bad faith disregard for authority and the law.”).
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

¶ 11 Here, Mother’s contempt motion alleged that Father had “willfully failed,

 refused and neglected to abide by the terms and provisions of [the Consent

 Order] . . . in that the [Father] ha[d] exercised [an] extra vacation week without the

 [Mother’s] agreement to changing the visitation schedule” after he had already

 “exercised his two non-consecutive weeks [with the children during their summer

 vacation].”4 At the contempt hearing, Father, the sole testifying witness, stated that

 during the children’s summer vacation in 2019, he exercised two consecutive weeks

 with the minor children in Europe and an additional non-consecutive third week of

 vacation with the children in Nebraska. Father provided Mother with written notice

 of these summer trips on 22 May 2019. Nonetheless, the trial court concluded that

 Father had willfully violated the Consent Order by taking the children for an extra

 week of summer vacation against the wishes of Mother. This was error.

¶ 12 When interpreting an agreement, the court must give the words used “their

 usual and ordinary meaning and all the terms of the agreement are to be reconciled

 if possible . . . .” Piedmont Bank & Tr. Co. v. Stevenson, 79 N.C. App. 236, 241, 339

 4 Although Mother argues on appeal that Father had “engaged in multiple violations” of the

 Consent Order, Mother’s motion for contempt and the Contempt Order itself identify only
 one violation: Father’s third week of summer visitation in 2019. As Mother did not seek to
 hold Father in contempt for any other alleged violations of the Consent Order, we do not
 consider her arguments regarding Father’s “past history of violations of the [Consent] Order”
 since this was not presented to the trial court.
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 S.E.2d 49, 52, aff’d, 317 N.C. 330, 344 S.E.2d 788 (1986); Anderson v. Anderson, 145

 N.C. App. 453, 458, 550 S.E.2d 266, 269-70 (2001).

¶ 13 As noted above, physical custody of the minor children during summer

 vacation is governed by Paragraph 2 of the Consent Order, which supersedes and

 takes priority over the regular physical custody schedule set out in the Consent

 Order. Paragraph 2 governs summer visitation “[n]otwithstanding [any] contrary

 provisions” in the Consent Order. Subsection 2(e) provides Father with custody of

 the minor children for “at least two non-consecutive weeks during each summer

 (school) vacation period” so long as Father provides “adequate, written notice of his

 proposed period of summer vacation for the upcoming summer period, (within 5 days

 of making the plans) including where he is traveling with the minor children.”

 (Emphasis added.) The Consent Order further provides that “in the event [Father]

 travels out of town with the minor children,” he may retain physical custody of the

 children for “two consecutive weeks for the trip[.]” In addition, the Consent Order

 states that “both parties agree to work together to arrange appropriate compromises

 when applicable regarding the . . . summer and holiday periods and with regard to

 the children attending summer camp and the like[.]”

¶ 14 Father asserts that a “reasonable interpretation of the [summer vacation]

 provision is that a party cannot have less than the guaranteed minimum time, but

 he/she may have more by giving timely written notice of his/her ‘proposed period of
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 summer vacation for the upcoming summer period.’ ” Father’s interpretation of the

 Consent Order is based in part upon interpreting the words “at least” to mean “no

 less than.” In other words, Father contends that he is guaranteed no less than two

 non-consecutive weeks with the children during summer vacation, and his weeks

 must be non-consecutive unless he and the children travel out of the country, and

 that he may also provide notice of additional summer vacation time if it is non-

 consecutive to the two other weeks and does not interfere with Mother’s designated

 week with the children.

¶ 15 On the other hand, Mother contends there is “only one reasonable

 interpretation of the summer vacation provisions” of the Consent Order. Her

 interpretation is based upon the words “at least,” as well, but she interprets this

 language to mean “no more than.” Mother argues that “[e]ach party is limited to two

 weeks and one week vacation respectively, upon proper notice absent the consent of

 the other party.” (Emphasis added.) She argues this interpretation is supported by

 the use of the words “at least,” specifically that the “terms ‘at least’ used within this

 provision represent a term of limitation over the [Father’s] vacation.” Thus, Mother

 claims that the “only reasonable interpretation” is that Father can have no more than

 two weeks unless she “agrees to extra time but cannot be limited to less than two

 weeks.” Because both parties are allowed “at least” a certain period of summer

 vacation, Mother contends that the usual interpretation of the words “at least” would
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 lead to the absurd result of a “ ‘race to notice’ vacation time where either party could

 designate essentially the entire summer as vacation by January 1 st of each year.”

 Mother posits that the ability to designate the entire summer as vacation time is

 contrary to the overall intent of the Consent Order for the parties to share joint

 custody of the children.

¶ 16 Had Father attempted to designate the entire summer as his vacation time,

 except for Mother’s designated week, based upon the provision granting him “at least”

 two weeks of summer vacation custody, it may be easier to consider his interpretation

 of the summer-visitation provisions unreasonable, if not entirely wrong, since taking

 the entire summer would require Father to claim more than two consecutive weeks.

 But Father’s interpretation of the words “at least” as meaning “no less than” is based

 upon the “usual and ordinary” meaning of the words and is not unreasonable. In the

 factual context of this case, Father’s unchallenged testimony indicated that he and

 the children had normally taken a vacation to Europe each year, and they went to

 France and Belgium during the two-week vacation in 2019. In addition, he and the

 children had normally visited his family in Nebraska each year, and this was the

 purpose for exercising a third week with the children during the summer of 2019.

 Again, Father did not attempt to exercise custody over the children for the entire

 summer, and his interpretation of the summer-visitation provisions is reasonable.

 Likewise, Mother’s interpretation of the summer-visitation provisions as
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 guaranteeing her one week and Father two weeks, but no more unless agreed

 otherwise, is also reasonable in the context of the entire Consent Order, even though

 her interpretation is based on using the words “at least” as a term of limitation. This

 is all to say that the provisions of the Consent Order regarding summer visitation are

 ambiguous.

¶ 17 Where terms of an agreement are ambiguous, the trial court may consider

 parol evidence to explain the agreement:

 Our courts, in determining the intent of the parties, look
 first to the language of the agreement. See Walton v. City
 of Raleigh, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996)
 (“If the plain language of a contract is clear, the intention
 of the parties is inferred from the words of the contract”).
 If a term is ambiguous, parol evidence may be admitted to
 explain the term. See Vestal v. Vestal, 49 N.C. App. 263,
 266-67, 271 S.E.2d 306, 309 (1980) (“Although parol
 evidence may not be allowed to vary, add to, or contradict
 an integrated written instrument . . . an ambiguous term
 may be explained or construed with the aid of parol
 evidence”). A closer examination of the contested
 provisions of the agreement is therefore warranted to
 determine if the intent of the parties can be ascertained
 from the plain language, or if parol evidence could properly
 be admitted to explain ambiguous terms.

 Jackson v. Jackson, 169 N.C. App. 46, 54, 610 S.E.2d 731, 737, rev’d, 360 N.C. 56, 620

 S.E.2d 862 (2005) (adopting dissenting opinion of Hunter, J., stating that the intent

 of the parties can be determined by the plain language of the agreement, and any
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 ambiguities creating questions of fact may be properly resolved with the use of parol

 evidence).

¶ 18 But here, neither party presented any parol evidence to explain or construe

 their respective interpretations of the terms of the Consent Order. Mother did not

 testify at the contempt hearing, and Father testified to his understanding of the

 summer-visitation provisions as allowing him “at least”—meaning “no less than”—

 two weeks and that since he gave Mother the required notice of his summer plans,

 which were not in conflict with her week of summer visitation or the children’s other

 summer plans, Father believed he complied with the Consent Order. While Father

 acknowledged that Mother had objected to the third week of summer vacation, he

 (reasonably) interpreted the Consent Order as entitling him to the third week of

 vacation so long as he gave proper notice to Mother. Again, Father’s interpretation

 of the Consent Order was at least as reasonable as Mother’s interpretation, and

 Mother presented no parol evidence to support her interpretation beyond the four

 corners of the document. In the end, the summer-visitation provisions in the Consent

 Order are ambiguous, and Father’s interpretation of those terms was not

 unreasonable.

¶ 19 As the Consent Order is ambiguous, the trial court erred by holding Father in

 civil contempt as he did not willfully violate the Consent Order:

 With respect to contempt, willfulness connotes knowledge
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 of, and stubborn resistance to, a court order. If the prior
 order is ambiguous such that a defendant could not
 understand his respective rights and obligations under
 that order, he cannot be said to have “knowledge” of that
 order for purposes of contempt proceedings. Due to the
 ambiguity of the 1983 judgment here, we reverse the trial
 court's adjudication of contempt.

 Blevins, 137 N.C. App. at 103, 527 S.E.2d at 671 (internal citations omitted). Father’s

 uncontested testimony at the contempt hearing demonstrated his genuine,

 reasonable belief that the summer-visitation provisions in the Consent Order did not

 require the parties to mutually agree on their proposed summer schedules. And

 Mother failed to present any evidence suggesting that Father’s alleged

 noncompliance was committed with knowledge of, and stubborn resistance to, the

 directives set out in the Consent Order.5 See id. at 103, 527 S.E.2d at 671. In short,

 because Father acted upon his reasonable interpretation of the ambiguous provisions

 of the Consent Order, we hold that the trial court erred by concluding that Father

 had willfully violated the Consent Order.

¶ 20 Father also argues on appeal that even if he was not entitled to exercise a third

 week of visitation under the Consent Order, the trial court erred by holding him in

 civil contempt because he was in compliance with the Consent Order before Mother

 5 Indeed, Mother acknowledges that Father “expressed a belief that the [Consent] Order
 allowed him to engage in” the very behavior that Mother alleged to be in noncompliance with
 the same.
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 had filed her motion for contempt. Because his alleged violation was based on a single

 incident in the past, Father contends the trial court could only find him in criminal,

 not civil, contempt. However, based upon our holding that the Consent Order

 provisions regarding summer visitation are ambiguous, we need not and do not

 address this argument.

 B. Attorney’s Fees

¶ 21 Father also argues that the trial court erred by awarding attorney’s fees. We

 agree.

¶ 22 Although we have determined the trial court erred by holding Father in civil

 contempt, this holding does not automatically eliminate the issue of attorney’s fees.

 In some limited circumstances, a party who has filed a contempt motion may recover

 attorney’s fees even where the alleged contemnor cannot be held in contempt at the

 time of the hearing. In Ruth v. Ruth, this Court addressed an award of attorney’s

 fees to a father who sought to hold the mother in contempt for failure to return the

 children after visitation. Ruth v. Ruth, 158 N.C. App. 123, 579 S.E.2d 909 (2003).

 After the father had filed the motion for contempt, the mother returned the children

 to the father. Id. at 125, 579 S.E.2d at 911. Because the mother had come into

 compliance with the court’s order before the hearing, this Court held that the “district

 court was without authority to adjudge [the mother] ‘to be in willful civil contempt’

 or to commit her to the custody of the sheriff, even for a suspended sentence, and
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

 those portions of the order must be vacated.” Id. at 126, 579 S.E.2d at 912. However,

 this Court affirmed the award of attorney’s fees to the father because the mother did

 not come into compliance until after the contempt motion was filed:

 As a general rule, attorney’s fees in a civil contempt action
 are not available unless the moving party prevails.
 Nonetheless, in the limited situation where contempt fails
 because the alleged contemnor complies with the previous
 orders after the motion to show cause is issued and prior to
 the contempt hearing, an award of attorney’s fees is proper.

 Therefore, that portion of the order requiring plaintiff to
 pay defendant’s North Carolina attorney's fees in the
 amount of $1,425 is affirmed.

 Id. at 127, 579 S.E.2d at 912 (internal citation omitted) (quoting another source). The

 “limited situation” presented in Ruth does not appear and is not applicable in this

 case. Even if Father’s exercise of the third week of visitation had violated the Consent

 Order, that week of visitation was the sole alleged violation of the Consent Order,

 and it occurred before Mother filed her motion for contempt. There is no legal basis

 for an award of attorney’s fees to Mother in this situation, and, therefore, we vacate

 the Contempt Order in its entirety.

 III. Conclusion

¶ 23 For the foregoing reasons, we vacate the Contempt Order entered

 20 February 2020.

 VACATED.
 WALTER V. WALTER

 2021-NCCOA-428

 Opinion of the Court

Judges TYSON and ZACHARY concur.