### BEVERLY POWELL *v.* WILLIAM A. LASH.

Where successive dams at a certain point upon a creek had thrown the water back upon the plaintiff's land to a certain extent for more than twenty years, and after that a new dam, no higher than the former dams but tighter than they, erected six feet lower down the creek, filled up the bed of the stream with sand, and sobbed the plaintiff's land to a considerably greater extent than before, although it did not *pond* the water further back ; *Held,* that the easement obtained by the twenty years possession, upon the maxim *tantum præscriptum quantum possessum,* did not protect the owner of the dam from liability on account of the new injury.

(*Felton* v. *Simpson,* 11 Ire. 84, and *Mebane* v. *Patrick,* 1 Jon. 23, approved.)

PETITION (filed 1868) to recover damages for an injury done by a mill dam to lands of the petitioner, tried before *Cloud, J.,* at Spring Term 1870, of STOKES Court.

The boundary of the plaintiff's land approached the creek on which the dam was, on its eastern side, about two hundred yards above the dam, and ran thence up the creek two hundred or three hundred yards, and then crossed it at right angles running west. Two dams that had previously stood near the point where the present dam stands, and successively up to the time that it was erected, had thrown the water back so as to damage the plaintiff's land upon the eastern bank *for more than twenty years before,*—up to a point about one hundred yards below that at which the plaintiff's line crosses the creek. In 1858 or 1859, the present dam was erected, at a point six feet farther down the creek than that which it succeeded. It was no higher than the former dam, but was tighter. It did not pond the water as far as either of the former dams, but after its erection, sand and mud accumulated at the upper end of the pond gradually, and drove the pond, or backwater, nearer and nearer to the dam, and, at the same time, raised the bed

of the stream through the plaintiff's land, above the line which crosses the creek, until the water became, in 1866 and thence down to the present time, on a level with the banks at the line, and of the average of a foot and a half below the top of the bank through forty acres of bottom, which became sobbed and unfit for cultivation. Previously, the banks at the point where the line crosses, were three feet high, and through the body of the forty acres they were four, or four and a half feet high; and the bottom was dry enough for cultivation, and yielded fine crops.

The defendant showed that for ten or fifteen years past the banks of the creek had been cleared, and that the creek had been gradually filling up for five or six miles above the dam, and that the same fact was to be observed in other streams.

The plaintiff admitted that the defendant, and those with whom he was connected, had had a twenty years user of so much of the plaintiff's lands as lay between the point where the line approached the pond on the east side of the creek, and a point about one hundred yards below where the line crosses the creek.

The plaintiff requested the Court to charge that a twenty years' user afforded a presumption of a grant of license or easement only to the extent and in the state to which there was enjoyment for the whole twenty years, and that if from the evidence they should believe that there had never been a user for that length of time above where the line crosses the creek, that the plaintiff was entitled to damages for the injury to his bottom lands above the said line.

The Court declined so to charge, and instructed the jury that a twenty years' maintenance of the dam, and for that time using any part of the plaintiff's lands, whether above or below the line crossing the creek, afforded a presumption of an easement, and rendered the defendant irresponsible for

damages, although the jury might believe that the filling up of the bed of the stream, and sobbing the plaintiff's bottom land above where his line crosses the stream, was occasioned by the dam of the defendant.

Verdict for the defendant; Judgment accordingly; Appeal by the plaintiff.

*J. I. Scales* and *Phillips & Merrimon*, for the appellant.
*Battle & Sons* and *Bragg, contra.*

DICK, J. The plaintiff admitted "that the defendant, and those with whom he was connected, had had a twenty years user of so much of the plaintiff's land as lay between the point where the line approached the pond on the east side of the creek, and a point about one hundred yards below where the line crosses the creek." This admission is in ac cordance with the facts set forth in the case. As the plaintiff permitted the defendant and those under whom he claimed to have the uninterrupted user, and enjoyment of the land for twenty years, for the purposes of a mill-pond, the law presumes that a right had been granted, and will not afford damages for an injury occasioned by such easement. The rights of the defendant and the acquiescence in the injury on the part of the plaintiff, are commensurate with the extent of the user on which the presumed grant is founded. On this subject, the Courts of the common law have adopted the rule of the civil law—*tantum præscriptum, quantum possessum*: Washburn on Easements, 123 ; Angell on Water Courses, 452.

The modern doctrine of easements by prescription was adopted for the purpose of quieting titles and giving effect to long continued possession. It is founded upon the fact, that there has been an adverse possession and assertion of a right which exposed the party to an action, and the party

encroached upon, has neglected to sue for the injury for a period of twenty years. The law presumes that the right asserted could not have been allowed unless there had been a grant : *Felton* v. *Simpson,* 11 Ire. 84; *Mebane* v. *Patrick,* 1 Jon. 23.

Every easement by prescription, is an invasion of the rights of the owner of the servient tenement, and he is only estopped from claiming damages as to such injuries as he has quietly submitted to for twenty years. If any new injury is occasioned by the easement, the owner of the servient tenement, may, at any time within twenty years, sustain an action for this additional invasion of his rights.

The damages claimed by the plaintiff in this case are for the injury occasioned by the mill-pond to forty acres of bottom land above the pond. It appeared in evidence, that before the erection of the new dam by the defendant in 1859, the forty acres of bottom land " were in a good state of cultivation and yielded fine crops," and had never sustained any injury from the dams erected by the previous owners ;. that the water in the channel at the point where the line crosses, was three feet below the top of the banks, and the average height of the banks above the current was four or four and a half feet through the whole extent of the bottom lands of the plaintiff. Soon after the new and tight dam of the defendant was erected, the pond began to fill up with sand and mud, so that the water in the channel became level with the banks at the point where the line crosses, and was elevated in the same proportion through said bottom land. This elevation of the water-level has rendered the land unfit for cultivation, and thus caused great injury to the plaintiff.

The plaintiff insisted that this injury had existed but a few years, and was caused by the mill-pond of the defendant. This was a question of fact to be decided by the jury, and

the instructions asked for by the plaintiff's counsel were substantially correct, and ought to have been given. His Honor was in error in charging that " a twenty years maintenance of the dam, and for that time, using any part of the plaintiff's land, whether above or below where the line crosses the creek, afforded a presumption of an easement, and rendered the defendant irresponsible for damages, although the jury might believe the filling up of the bed of the stream, and the sobbing of the plaintiff's bottom land above where the line crosses the stream, was occasioned by the dam of the defendant."

The rights of the plaintiff were greatly prejudiced by this ruling of his Honor, and there must be a *venire de novo.*

Let this be certified.

PER CURIAM,                                    *Venire de novo.*