DAVID JAMES BLEVINS, Plaintiff v. KENNETH D. WELCH and wife, W. LUCY WELCH, and MICHAEL WELCH and wife, GEORGIA WELCH, Defendants

No. COA99-501

(Filed 21 March 2000)

### 1. Contempt— interpretation of prior order—willfulness

The trial court did not impermissibly transform the contempt action concerning obstruction of plaintiff's enjoyment of an easement into a declaratory judgment action by considering whether the easement awarded in the 1983 judgment included both the Mountain and Center Roads because a contempt proceeding requires willful violation of a prior court order or judgment, and therefore, an interpretation of the prior court order was required.

### 2. Contempt— ambiguous order—deference to trial court

Even though the record in a contempt action reveals the 1983 judgment concerning an easement was ambiguous as a matter of law and susceptible to three different interpretations, the Court of Appeals deferred to the trial court's interpretation applying the judgment to both the Mountain and Center roads, especially in light of the fact that the trial judge is the same one who presided over the original judgment now being interpreted.

### 3. Contempt— ambiguous order—no evidence of willfulness

The trial court erred in holding defendants in contempt for violating the pertinent 1983 judgment concerning an easement because there was no evidence of willfulness on the part of defendants due to the ambiguous nature of the judgment.

### 4. Contempt— attorney fees—easements—no specific statutory authority

The trial court erred in awarding plaintiff $2,000 in attorney fees for a contempt action involving easements because there is no specific statutory authorization for the award of attorney fees in this type of action.

Appeal by defendants from order entered 15 October 1998 by Judge Alexander Lyerly in Mitchell County District Court. Heard in the Court of Appeals 25 January 2000.

**BLEVINS v. WELCH**

[137 N.C. App. 98 (2000)]

*Harrison & Poore, P.A., by Hal G. Harrison, for plaintiff-appellee.*

*Randy A. Carpenter for defendant-appellants.*

LEWIS, Judge.

This appeal arises from an order holding defendants in contempt for violating a court order. The basis is defendants' obstruction of plaintiff's enjoyment of an easement he purportedly has that runs across defendants' lands. Although the immediate issue on appeal is the contempt order, a resolution of this issue actually requires us to delve nearly two decades into the past and consider the judgment that awarded plaintiff's predecessors-in-title the easement in the first place.

As the map below illustrates, plaintiff and defendants are neighboring landowners in Mitchell County. N.C. State Road 1174 (also known as Rebels Creek Road) runs through defendants' properties. This case involves an unimproved dirt road that turns off of Rebels Creek Road and also runs through defendants' properties. A few hundred feet from Rebels Creek Road, this unimproved road forks off into two directions. The left fork, which we will refer to as the Center Road, runs for a short distance along the southwestern boundary of defendant Michael Welch's land and then enters plaintiff's property at his southern boundary. It

dead ends within a few hundred feet. The right fork, herein referred to as the Mountain Road, continues for several hundred feet along the western boundary of both defendants' properties before entering plaintiff's property at his northern boundary. The Mountain Road then exits plaintiff's land, apparently improves in quality, and continues on towards the town of Bandana.

As part of a judgment entered in 1983 ("the 1983 judgment"), plaintiff's predecessors-in-title were awarded a prescriptive easement. That easement allowed plaintiff's predecessors-in-title to use "a road" that traversed defendants' properties as a means of perpetual ingress and egress. The 1983 judgment described this road as follows:

3. [It] extends from the Rebels Creek Public Road along the western boundary of and through the lands of the Defendants Welch to the lands of the plaintiffs . . . .

4. [It] has provided the sole means of ingress and egress to plaintiffs' lands and has been used in connection with mining and timbering operations conducted on plaintiffs' lands . . . .

In 1995, plaintiff purchased his property, along with the easement, from those who were plaintiffs in the 1983 judgment. Shortly thereafter, he and his family began using the Mountain Road. Defendants responded by constructing a roadblock to prevent plaintiff's use; they left the Center road unobstructed. Plaintiff then instituted this action, asserting defendants' contempt of the 1983 judgment. At a contempt hearing before the same judge who decided the 1983 case, defendants argued that the "road" described in the 1983 judgment was the Center Road only. Plaintiff, on the other hand, maintained that the judgment included both the Center and Mountain roads. The trial court concluded that the 1983 judgment included both the Mountain and Center roads. The trial court then concluded that, by obstructing plaintiff's use of the Mountain Road, defendants were in contempt. The trial court also awarded plaintiff $2000 in attorney's fees. From this order, defendants appeal.

[1] In their first argument, defendants contend the trial court impermissibly transformed the contempt action that was before it into a declaratory judgment action by considering whether the easement awarded in the 1983 judgment included both the Mountain and Center roads. We find this argument to be without merit. A contempt proceeding requires willful violation of a prior court order or judgment.

*Hancock v. Hancock*, 122 N.C. App. 518, 523, 471 S.E.2d 415, 418 (1996). As such, an interpretation of the prior court order in this case was required. The trial court did not err by considering what road or roads the easement in the 1983 judgment included.

[2] Next, defendants argue that the trial court incorrectly interpreted the 1983 judgment to apply to both the Mountain and Center roads. Generally, the interpretation of judgments presents a question of law that is fully reviewable on appeal. *Reavis v. Reavis*, 82 N.C. App. 77, 80, 345 S.E.2d 460, 462 (1986). In interpreting judgments, we are to consider the pleadings, issues, and other circumstances leading to the judgment. *White v. Graham*, 72 N.C. App. 436, 441, 325 S.E.2d 497, 501 (1985). Aside from the 1983 judgment itself, the record on appeal here, however, contains no information relative to the prior judgment. We are thus left to piece together the issues and circumstances leading up to that judgment.

Based upon our review of the record before us, we conclude that the 1983 judgment was ambiguous as a matter of law. Specifically, we conclude that the judgment was reasonably susceptible to three differing interpretations. First, the judgment can reasonably be construed to include both the Mountain and Center roads. After all, both roads do in fact "extend[] from the Rebels Creek Public Road along the western boundary of and through the lands of the Defendants Welch to the lands of the plaintiffs." Second, the judgment can be interpreted to only include the Mountain Road, since the Mountain Road extends along much more of the western boundary than does the Center Road. Furthermore, the judgment throughout only refers to "a road," refuting the notion that more than one road was intended to be included. Third, the judgment is reasonably susceptible to the interpretation that only the Center Road was included. The Center Road provides the "sole means of ingress and egress" to the majority of plaintiff's property. The Mountain Road, on the other hand, is not a sole means of ingress and egress; plaintiff can access the northeastern tip of his property by traveling south from Bandana, in which case he would never have to cross into defendants' properties. Adding to all of this uncertainty is the fact that plaintiff's and defendants' lands had not even been surveyed at the time of the 1983 action. Thus, any description of the easement was inherently imprecise. Accordingly, we conclude that the 1983 judgment was ambiguous. Our next step, then, is to resolve this ambiguity.

Unfortunately, the law with respect to ambiguous judgments is not very well-developed in our State. What little law there is can be

summarized as follows: Where a judgment is ambiguous, and thus susceptible to two or more interpretations, our courts should adopt the interpretation that is in harmony with the law applicable to the case. *See Alexander v. Brown*, 236 N.C. 212, 215, 72 S.E.2d 522, 524 (1952). This principle is not helpful here because more than one of the above interpretations is in harmony with the law concerning prescriptive easements.

Prescriptive easements require the showing of four elements: (1) an adverse or hostile use; (2) the use has been open and notorious; (3) the use has been continuous and uninterrupted for at least twenty years; and (4) substantial identity of the way claimed to be an easement. *Potts v. Burnette*, 301 N.C. 663, 666, 273 S.E.2d 285, 287-88 (1981). At the contempt hearing, plaintiff's evidence tended to show that the pre-1983 use of both roads satisfied all four of these elements. Defendants' evidence, on the other hand, tended to show that only the pre-1983 use of the Center Road satisfied the requisite elements. Accordingly, we are left with an ambiguous judgment, reasonably susceptible to more than one interpretation, all of which are in relative harmony with the applicable law. We have found no guidance in our state with respect to this rare situation, and so we turn to the common law and to other states for assistance.

Although no unanimity seems to exist, several courts, in the context of ambiguous judgments, have given deference to the trial court's interpretation of the prior judgment. Exactly how much deference varies. *See, e.g., County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) (stating a trial court's interpretation is subject to an abuse of discretion standard); *Holmberg v. Holmberg*, 578 N.W.2d 817, 825 (Minn. Ct. App. 1998) (stating the trial judge's interpretation is given "great weight"), *aff'd*, 588 N.W.2d 720 (Minn. 1999); *Schultz v. Schultz*, 535 N.W.2d 116, 120 (Wis. Ct. App. 1995) (stating that some deference is given to the trial court's interpretation). *But see Kerndt v. Ronan*, 458 N.W.2d 466, 470-71 (Neb. 1990) (stating that a trial judge's interpretation is irrelevant). Deference to a trial judge's interpretation is even more appropriate where, as here, that trial judge is the same one who presided over the original judgment now being interpreted. This is so because "the [trial judge's] resolution of the ambiguity is made based upon the judge's experience of trial or prior experience with the record." *Schultz*, 535 N.W.2d at 120. Here, the trial judge interpreted the 1983 judgment to include both roads. We will defer to his experience with this case and the parties and therefore affirm his interpretation.

[3] Having resolved the ambiguity in the 1983 judgment, we must next determine whether, by blockading plaintiff's access to the Mountain Road, defendants were in contempt of this judgment. As previously stated, in order to be held in contempt, a party must have willfully violated a court order. *Hancock*, 122 N.C. App. at 523, 471 S.E.2d at 418. The trial court here found that defendants did willfully violate the 1983 judgment. This finding is conclusive on appeal if supported by competent evidence. *Clark v. Clark*, 294 N.C. 554, 571, 243 S.E.2d 129, 139 (1978). Here, however, there was simply no evidence of willfulness on the part of defendants.

With respect to contempt, willfulness connotes knowledge of, and stubborn resistance to, a court order. *Mauney v. Mauney*, 268 N.C. 254, 257, 150 S.E.2d 391, 393 (1966). If the prior order is ambiguous such that a defendant could not understand his respective rights and obligations under that order, he cannot be said to have "knowledge" of that order for purposes of contempt proceedings. *Cf. In re Board of Commissioners*, 4 N.C. App. 626, 629-30, 167 S.E.2d 488, 491 (1969) ("The generality of the Order leaves much to be desired, and it is questionable whether the Order is capable of full understanding. . . . In view of the apparent vagueness of the order . . . and the lack of notice to show cause before entry of the Order appealed from, we reverse the adjudication of contempt . . .."). Due to the ambiguity of the 1983 judgment here, we reverse the trial court's adjudication of contempt.

[4] Finally, we address the trial court's award of attorney's fees. Generally speaking, "[a] North Carolina court has no authority to award damages to a private party in a contempt proceeding. Contempt is a wrong against the state, and moneys collected for contempt go to the state alone." *Glesner v. Dembrosky*, 73 N.C. App. 594, 599, 327 S.E.2d 60, 63 (1985) (citations omitted). But our courts can award attorney's fees in contempt matters when specifically authorized by statute. *Records v. Tape Corp.*, 18 N.C. App. 183, 187, 196 S.E.2d 598, 602, *cert. denied*, 283 N.C. 666, 197 S.E.2d 880 (1973). Thus, in *Smith v. Smith*, 121 N.C. App. 334, 465 S.E.2d 52 (1996), we allowed attorney's fees in a contempt action to enforce a child support order because our child support statutes specifically authorized such an award. *Id.* at 339-40, 465 S.E.2d at 55-56. With respect to contempt actions involving easements, however, there is no specific statutory authorization for the award of attorney's fees. We therefore reverse that part of the trial court's order awarding plaintiff $2000 in attorney's fees.

In conclusion, we feel obligated to comment on the scope of the easement here. "In the case of easements arising by prescription, the character and pattern of the user during the whole period during which the easement came into being determines its extent." 1 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 15-22 (5th ed. 1999). This is so because a prescriptive easement is a form of estoppel; "[it] is an invasion of the rights of the owner of the servient tenement, and he is only estopped from claiming damages as to such injuries as he has quietly submitted to for twenty years." *Powell v. Lash*, 64 N.C. 456, 459 (1870). Accordingly, "[i]f any *new injury* is occasioned by the easement, the owner of the servient tenement, may, at any time within twenty years, sustain an action for this *additional invasion* of his rights. *Id.* (emphasis added). Here, the prescriptive easement was based upon two uses by plaintiff's predecessors-in-title: (1) mining and timbering operations; and (2) ingress and egress to their property. These uses thus define the scope of the easement that plaintiff now owns. At the contempt proceeding, plaintiff testified that he is currently using the roads for two uses: (1) ingress and egress; and (2) recreational four-wheeling. Pure recreational use was never contemplated in the 1983 judgment and thus would appear to exceed the scope of the easement awarded therein. Any use consistent with ingress and egress to plaintiff's property, however, would be within the scope of that easement. The able trial judge has resolved the use of the easement granted in 1983. The parties now understand what easements exist and the limitations on them.

Affirmed in part, reversed in part.

Judges GREENE and EDMUNDS concur.