IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-792

Filed 7 May 2024

Union County, No. 20 CVD 2294

DEBBIE HAYTHE, Plaintiff,

v.

JAMES HAYTHE, JR., Defendant.

Appeal by defendant from order entered 17 January 2023 by Judge Joseph Williams in District Court, Union County. Heard in the Court of Appeals 6 March 2024.

*No brief filed for pro se plaintiff-appellee.*

*Plumides, Romano & Johnson, PC, by Richard B. Johnson, for defendant-appellant.*

ARROWOOD, Judge.

James Haythe, Jr. ("defendant") appeals from the trial court's order on alimony, contempt, and attorney's fees. Defendant contends the trial court erred by ordering defendant to pay a lump sum alimony award and $12,625.00 in attorney's fees, and the trial court abused its discretion by enjoining defendant's equitable distribution award and finding defendant in contempt. We decide the issues as follows.

I.     Background

Defendant and Debbie Haythe ("plaintiff") were married on 25 December 2008 and separated on 16 March 2020. Plaintiff initiated this action by filing a complaint on 14 October 2020, including claims for post-separation support ("PSS"), alimony, equitable distribution, and attorney's fees. On 7 December 2020, defendant filed an answer, including affirmative defenses and a counterclaim.

The trial court conducted a hearing on plaintiff's complaint on 3 June 2021. The trial court entered an order on 4 June 2021 requiring defendant to pay plaintiff $850.00 per month in PSS and an additional $100.00 per month towards PSS arrears of $6,800.00. The trial court determined that defendant had a surplus each month and was able to pay PSS.

On 1 October 2021, defendant filed a motion for interim distribution and injunctive relief due to plaintiff's failure to pay the monthly mortgage on the marital home. On 15 December 2021, the trial court entered an order for interim distribution and injunctive relief, requiring the immediate sale of the marital home with any proceeds to be placed in defendant's attorney's trust account pending further order. The marital home was subsequently sold, and the parties netted $165,852.11 in proceeds plus a $5,000.00 deposit, which were placed in the trust account.

Plaintiff's claim for alimony and both parties' claims for equitable distribution came on for trial on 5 April 2022. The trial court denied defendant's motion to dismiss plaintiff's alimony claim, and because plaintiff was not prepared to continue on the alimony claim, the trial court proceeded with the parties' equitable distribution

claims. After the trial but before the trial court issued an order, plaintiff filed a motion for order to show cause alleging that defendant failed to comply with the 4 June 2021 order requiring defendant to pay plaintiff PSS.

The trial court issued an order on 11 July 2022 on equitable distribution of the parties' property. The trial court concluded that the net value of the marital residence would be equitably distributed between the parties, and the order specified that plaintiff's $85,426.06 share should be released to her from defendant's attorney's trust account. However, the trial court also instructed that defendant's attorney was to hold defendant's $85,426.05 share in trust until plaintiff's contempt motion for nonpayment of PSS was resolved.

Defendant filed a financial affidavit and notice of hearing on 20 July 2022. The trial court filed a notice of hearing on 8 August 2022, setting the hearing date for 25 August 2022. Plaintiff filed a motion to continue on 17 August 2022, to which defendant filed an objection. On 18 August 2022, the trial court allowed plaintiff's motion and filed an order to continue the case to 23 September 2022. The trial court filed notices of the hearing on 22 August 2022 and 8 September 2022. Plaintiff filed a financial affidavit on 14 September 2022, including attachments concerning her income tax returns, property interests in Texas, bank statements, and the marital residence.

The trial court conducted a hearing on 23 September 2022. Plaintiff testified that defendant's income was higher than hers during their marriage, and his income

paid for their marital expenses. Plaintiff described her role and duties as a housewife and pastor's wife, and she testified that defendant did not ask her to seek employment, though she on occasion held temporary jobs. Plaintiff further told the court that she used her retirement savings and annuities to help defendant pay off his debt, and when defendant left their home, she had only $600.00 left in those accounts. She explained that she was not eligible for Social Security from her previous employment as a teacher, so she would have to collect Social Security through defendant. Plaintiff testified that defendant had paid only a total of $1,050.00 in PSS, and she had accrued $16,130.00 in attorney's fees throughout the litigation.

Defendant testified that plaintiff used some of her retirement funds to support their marital expenses, such as paying his church's taxes and for a car, and plaintiff assumed his credit card debt for purchases he'd made during the marriage. Defendant confirmed he had not paid plaintiff more than $1,050.00 in PSS. Evidence regarding the parties' incomes was introduced, showing that defendant made a range of approximately $62,000.00 to $77,000.00 each year from 2019 through 2021, and plaintiff made $7,359.00 in 2019 and $3,554.00 in 2020. Defendant told the trial court that plaintiff was certified as a teacher and had previously worked at Walmart, but plaintiff had refused to find employment during the marriage. Defendant also testified that he was in the negative each month, but on cross-examination, he admitted he did not have a negative balance on his bank statements in evidence.

On 22 November 2022, Judge Williams sent a letter to the parties summarizing the trial court's decision and reasoning.

The trial court filed an order on alimony, contempt, and attorney fees on 17 January 2023. The trial court found the following relevant findings of fact:

> 16. That just prior to the parties' separation, Defendant left the marital residence and was gone for weeks.
>
> 17. That Defendant abandoned Plaintiff and withdrew his love and affection from Plaintiff without just cause.
>
> 18. That Defendant, shortly after the parties' separation, and while Plaintiff was still living in the marital residence, shut off the utilities (lights, water, cable, and sanitation) to the marital residence without notice to Plaintiff. This was during the middle of a pandemic.
> . . . .
> 22. That Plaintiff was a faithful and dutiful wife.
>
> 23. That Plaintiff cleaned the house, washed the parties' clothes, and prepared Defendant's dinners.
> . . . .
> 25. That Plaintiff assisted Defendant in his work as a minister.
> . . . .
> 27. That Plaintiff brought into the marriage some savings from a job she performed in Texas as a teacher and used those monies in the marriage to help support the family, purchase vehicles for Defendant and pay off some church taxes that belonged to Defendant.
>
> 28. That Plaintiff only had $600 in her retirement account on the date of separation.
> . . . .
> 30. That Plaintiff did not work for some years after she married Defendant.
> . . . .
> 34. That Plaintiff is currently unemployed.

. . . .

37. That Plaintiff was and is substantially dependent on Defendant to maintain the lifestyle to which she was accustomed.

38. That Defendant was employed as a nurse on the parties' date of separation.

39. That at all times during the marriage, Defendant earned more money than Plaintiff.

. . . .

49. . . . Defendant has minimal money with which to pay alimony on a monthly basis.

50. That each party received over $80,000 in equitable distribution proceedings.

51. That Defendant, thus, has the means and ability to pay Plaintiff alimony as a lump sum.

. . . .

59. That Plaintiff is a dependent spouse within the meaning of N.C. Gen. Stat. § 50-16.1A, and Defendant is a supporting spouse within the meaning of that statute.

60. That during the course of the parties' marriage, Defendant was the primary means of financial support for Plaintiff.

61. That Defendant has the ability to pay support and the resources of Plaintiff are not adequate to meet her reasonable needs considering the factors set forth in N.C. Gen. Stat. § 50-16.2A(b).

62. That Defendant has willfully failed to provide Plaintiff sustenance according to his means and ability and has rendered Plaintiff's condition intolerable and life burdensome and thus he owes an obligation to pay alimony to Plaintiff.

63. That Defendant will continue being employed as a nurse and Plaintiff's ability to start teaching, again after

long periods of not being a teacher, is probably not likely.

. . . .

65. That since the entry of the Order on Post Separation Support, Defendant has only paid $1,050 to Plaintiff.

. . . .

68. That Defendant is in willful contempt of the Court's Post-separation Order as he had the means and ability to comply with the order but has willfully refused to do so.

69. That Defendant currently owes $13,580 in post-separation support to Plaintiff.

. . . .

73. That Plaintiff was unable to pay for Mrs. McBeth's continued legal services, and due to her non-payment, she had to represent herself in an equitable distribution proceeding.

74. That after she received an award from the proceeding, Plaintiff paid Mrs. McBeth to be her lawyer for the alimony hearing.

75. That Mrs. McBeth charged Plaintiff at the rate of $300 an hour. The total fees incurred by Plaintiff was $12,625.

76. That the fees incurred were reasonable and necessary for Plaintiff to present her claim and meet Defendant on an equal basis.

The trial court also made the following relevant conclusions of law:

3. That the Defendant is the supporting spouse within the meaning of N.C. Gen. Stat. § 50-16.1A(5), and the Plaintiff is the dependent spouse within the meaning of N.C. Gen. Stat. § 50-16.1A(2).

4. That Plaintiff is actually and substantially dependent upon Defendant for her maintenance and support and is substantially in need of maintenance and support from Defendant.

5. That Defendant is able to pay the amount designated

- 7 -

herein.

6. An award of alimony is equitable after considering all relevant factors.

7. The amount of alimony awarded is fair and just to all parties.

8. The Defendant is in willful civil contempt of Court as shown by clear, cogent and convincing evidence.

9. That Plaintiff is entitled to an order requiring Defendant to pay her reasonable attorney fees.

10. That Plaintiff is an interested party proceeding in good faith.

11. That Plaintiff had and still has insufficient means to defray the expense of meeting Defendant as a litigant on substantially even terms.

12. That the terms of this Order are fair and reasonable, and the Defendant is capable of complying with them.

The trial court ordered defendant to pay $40,000.00 in alimony, $13,580.00 to purge himself of contempt for non-payment of PSS, and $12,262.00 in attorney fees to plaintiff from the assets held in his attorney's trust account.

Defendant filed notice of appeal on 24 January 2023.

## II.    Discussion

Defendant contends the trial court erred by ordering defendant to pay lump sum alimony and $12,625.00 in attorney's fees, abused its discretion by restraining defendant's equitable distribution award, and erred by finding defendant in contempt. We disagree but remand for further findings of fact to support the amount

of the lump sum alimony payment.

## A.  Alimony

The trial court's determination of whether a spouse is entitled to alimony is reviewed de novo. *Barrett v. Barrett*, 140 N.C. App. 369, 371 (2000) (citing *Rickert v. Rickert*, 282 N.C. 373, 379 (1972)).  The trial court's determination of the amount, duration, and manner of payment of alimony is reviewed for abuse of discretion. *Id.* (citing *Quick v. Quick*, 305 N.C. 446, 453 (1982)).  "[W]hen the trial court sits without a jury, the standard of review on appeal is whether . . . competent evidence . . . support[s] the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Collins v. Collins*, 243 N.C. App. 696, 699 (2015) (citation omitted).  "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97 (1991) (citations omitted).

In an action brought pursuant to Chapter 50 of the General Statutes, either party may move for alimony, and "[t]he court shall award alimony to the dependent spouse upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors[.]"  N.C.G.S. § 50-16.3A(a) (2023).

"The court shall exercise its discretion in determining the amount, duration, and manner of payment of alimony[,]" and the court must consider "all relevant factors," including

[t]he relative earnings and earning capacities of the spouses . . . [t]he ages and the physical, mental, and emotional conditions of the spouses . . . [t]he amount and sources of earned and unearned income of both spouses; . . . [t]he standard of living of the spouses established during the marriage; . . . [t]he duration of the marriage; . . . [t]he relative assets and liabilities of the spouses and the relative debt service requirements of the spouses[;] . . . [t]he contribution of a spouse as homemaker; . . . [t]he relative needs of the spouses; . . . [and any] other factor relating to the economic circumstances of the parties that the court finds to be just and proper.

N.C.G.S. § 50-16.3A(b).

On appeal, defendant challenges findings of fact 51, 59, 61, and 62 as well as conclusions of law 3 through 7, 11, and 12 regarding the alimony award. Defendant challenges the trial court's finding that plaintiff was a dependent spouse. To be a dependent spouse, one must be either "actually substantially dependent upon the other spouse" or "substantially in need of maintenance and support from the other spouse." N.C.G.S. § 50-16.1A(2) (2023). Defendant does not challenge the trial court's findings regarding plaintiff's income and monthly expenses, and thus, the trial court's finding that "Plaintiff would have a shortage of $3,319.02 per month" is binding on appeal. "This in and of itself supports the trial court's classification of her as a dependent spouse." *Barrett*, 140 N.C. App. at 372 (citing *Phillips v. Phillips*, 83 N.C. App. 228, 230 (1986) ("The trial court found that plaintiff had monthly expenses of $1,300 and a monthly salary of $978. That leaves her with a deficit of $322 a month. From these facts, the trial court could have found that plaintiff was both actually

substantially dependent on defendant and substantially in need of defendant's support.")).

However, "[j]ust because one spouse is a dependent spouse does not automatically mean the other spouse is a supporting spouse." *Barrett*, 140 N.C. App. at 373 (citation omitted). "A surplus of income over expenses is sufficient in and of itself to warrant a supporting spouse classification." *Id.* (citing *Beaman v. Beaman*, 77 N.C. App. 717, 723 (1985)). Unchallenged findings 37 through 49 pertain to defendant's income and expenses, and they are binding on appeal. The trial court's findings that "Plaintiff was and is substantially dependent on Defendant to maintain the lifestyle to which she was accustomed[,]" defendant earned more money than plaintiff during the marriage, and his current monthly income exceeded his expenses, even if only slightly, adequately support its classification of defendant as the supporting spouse.

The trial court clearly considered relevant factors in its determination that an alimony award for plaintiff was equitable. Along with considering the previous marital lifestyle, unchallenged findings 11 through 36 show that the trial court considered the earned and unearned incomes of the parties, their assets and needs, plaintiff's contribution as homemaker, the marital dynamics, and the parties' ability to earn money. Specifically, plaintiff depleted her retirement account throughout the marriage, using the funds to pay defendant's church's taxes and purchase him a car. Plaintiff had only $600.00 remaining in her retirement account upon the parties'

separation. These findings support the trial court's decision that an alimony award for plaintiff was equitable.

Defendant also challenges the lump sum alimony award of $40,000.00 and finding of fact 51 that he has the means and ability to pay the alimony as a lump sum. In determining the amount of alimony, "[c]onsideration must be given to the needs of the dependent spouse, but the estates and earnings of both spouses must be considered. It is a question of fairness and justice to all parties." *Kelly v. Kelly*, 167 N.C. App. 437, 441 (2004) (citations and internal quotation marks omitted). The trial court exercised its discretion in its decision by considering the relevant factors as described above. Although the trial court found that defendant "has minimal money with which to pay alimony on a monthly basis[,]" the trial court also found that he received over $80,000.00 in equitable distribution proceedings that remained in his attorney's trust account. Thus, this unchallenged finding supports the trial court's determination that defendant had the ability to pay a lump sum for alimony.

Defendant further contends that the trial court did not provide any reasoning for how it determined a $40,000.00 lump sum award. We agree. "The court shall set forth the reasons for its award or denial of alimony and, if making an award, the reasons for its amount, duration, and manner of payment." N.C.G.S. § 50-16.3A(c); *see also Hartsell v. Hartsell*, 189 N.C. App. 65, 76 (2008) ("With respect to the $650.00, the trial court made only a finding that plaintiff had the ability to pay that amount, but provided no explanation as to why it had concluded that defendant was entitled

to that specific amount."). While it may be possible to deduce the trial court's reasoning for the $40,000.00 award from the order and record, it is not up to us to do so; therefore, we remand for further findings as to how the court determined the specific amount it ordered to be paid. In sum, the trial court did not err in awarding alimony to plaintiff, nor did it abuse its discretion in determining defendant was able to pay a lump sum. However, we remand for additional findings on how the trial court reached its $40,000.00 award.

## B.  Attorney Fees

Whether a spouse is entitled to attorney's fees is reviewed de novo. *See Barrett*, 140 N.C. App. at 374 (citing *Clark v. Clark*, 301 N.C. 123, 136 (1980)). "The amount awarded will not be overturned on appeal absent an abuse of discretion." *Id.* at 375 (citing *Spencer v. Spencer*, 70 N.C. App. 159, 169 (1984)). "A spouse is entitled to attorney's fees if that spouse is (1) the dependent spouse, (2) entitled to the underlying relief demanded (e.g., alimony and/or child support), and (3) without sufficient means to defray the costs of litigation." *Id.* at 374 (citing *Clark*, 301 N.C. at 135–36).

Our holding regarding alimony satisfies the first two requirements: plaintiff is a dependent spouse and is entitled to receive alimony. We now must determine whether plaintiff had the means to defray the costs of litigation. Defendant challenges findings of fact 73 through 76 that plaintiff was unable to continue to pay attorney's fees and represented herself in the equitable distribution case, plaintiff received the funds from equitable distribution and paid her attorney, and the $300.00

per hour rate for a total of $12,625.00 was reasonable and necessary for plaintiff's representation. The trial court found, and defendant does not challenge, that plaintiff was unemployed, her monthly expenses exceeded her income, and that she had to borrow money from family members to retain her attorney for the PSS hearing. The findings of fact show that plaintiff depleted her retainer on the PSS hearing, and after the PSS hearing, the record is clear that plaintiff represented herself in the equitable distribution proceeding because she could not afford to continue to pay her attorney. Viewed together, these findings support that plaintiff was unable to pay the costs of litigation, and the trial court did not err in awarding plaintiff attorney's fees.

Defendant argues that there was not competent evidence to support the amount of fees awarded because the fee affidavit was not admitted into evidence and thus the breakdown of the fees is unknown. We believe the record supports the amount of fees awarded. Plaintiff testified regarding invoices she had received for her attorney's work; she stated that she received separate invoices for $3,080.00, $4,025.00, $525.00, and $4,999.00, billed at $300.00 per hour. These amounts total $12,629.00. The trial court found plaintiff incurred $12,625.00 in attorney fees and ordered defendant to pay the same. However, "in order for the appellate court to determine if the statutory award of attorneys' fees is reasonable, the record must contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney." *Cotton v. Stanley*, 94 N.C. App. 367, 369 (1989). Because the trial court did not include these

findings of fact in its order, we remand for further findings in accordance with this opinion.

### C.  Restraining Equitable Distribution

Defendant next contends that the trial court erred in restraining the funds he received through equitable distribution.  We disagree.

The trial court continued the issue of alimony at the 5 April 2022 hearing for equitable distribution, and the trial court acknowledged that plaintiff had a right to enforce the delinquent PSS payments.  On 25 May 2022, plaintiff filed her motion for order to show cause, alleging that defendant should be held in contempt for his non-payment of PSS.  The trial court's 11 July 2022 order instructed that defendant's attorney "is to continue to hold in his trust account Mr. Haythe's $85,426.05 in proceeds until Mrs. Haythe's Contempt Motion for nonpayment of [PSS] is resolved." The trial court had the authority to order such a restraint in the interest of pending litigation.  *See* N.C.G.S. § 50-20(i) (2023) ("The court, in lieu of granting an injunction, may require a bond or other assurance of sufficient amount to protect the interest of the other spouse in the property.").  This instruction ensured that defendant would be able to comply with any future orders requiring defendant to make payments to plaintiff.  Therefore, we hold that the trial court did not err in ordering defendant's portion of the proceeds from the sale of the marital home to be held in trust.

### D.  Contempt

An aggrieved party may initiate a proceeding for civil contempt pursuant to

N.C.G.S. § 5A-23 by motion

> giving notice to the alleged contemnor to appear before the
> court for a hearing on whether the alleged contemnor
> should be held in civil contempt. A copy of the motion and
> notice must be served on the alleged contemnor at least five
> days in advance of the hearing unless good cause is shown.
> The motion must include a sworn statement or affidavit by
> the aggrieved party setting forth the reasons why the
> alleged contemnor should be held in civil contempt. The
> burden of proof in a hearing pursuant to this subsection
> shall be on the aggrieved party.

N.C. Gen. Stat. § 5A-23(a1) (2023). "When reviewing a trial court's contempt order,

the appellate court is limited to determining whether there is competent evidence to

support the trial court's findings and whether the findings support the conclusions."

*Shumaker v. Shumaker*, 137 N.C. App. 72, 77 (2000) (citing *Adkins v. Adkins*, 82 N.C.

App. 289 (1986)).

Our statutes describe civil contempt as "[f]ailure to comply with an order of a

court" as long as

> (1) [t]he order remains in force;
> (2) [t]he purpose of the order may still be served by
> compliance with the order;
> (2a) [t]he noncompliance by the person to whom the order
> is directed is willful; and
> (3) [t]he person to whom the order is directed is able to
> comply with the order or is able to take reasonable
> measures that would enable the person to comply with the
> order."

N.C.G.S. § 5A-21(a) (2023). "Willfulness constitutes: (1) an ability to comply with the

court order; and (2) a deliberate and intentional failure to do so." *Watson v. Watson*,

187 N.C. App. 55, 66 (2007) (quoting *Sowers v. Toliver*, 150 N.C. App. 114, 118 (2002)).

Defendant challenges the court's finding that "he had the means and ability to comply with the order but has willfully refused to do so." Here, the trial court's unchallenged findings show that defendant was employed as a nurse when the parties separated, he will continue to be employed as a nurse, he has a net income of $4,100.79 per month, and he received over $80,000.00 in equitable distribution proceedings. The trial court also found that since the order on PSS entered 4 June 2021, defendant has paid only $1,050.00 to plaintiff. These findings indicate that defendant had the means to comply or take reasonable measure to enable him to comply with the order, and the finding that defendant was in contempt of the order is supported by competent evidence. Thus, the trial court did not err in finding defendant was in contempt.

## III. Conclusion

For the foregoing reasons, we affirm the trial court's order and remand for additional findings regarding the reasoning for the $40,000.00 alimony award as well as additional findings regarding the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney in the $12,625.00 award of attorney fees. In doing so the trial court may rely upon the record before it or in its discretion take additional evidence necessary to make the additional required findings.

AFFIRMED IN PART AND REMANDED FOR ADDITIONAL FINDINGS IN PART.

Judge COLLINS concurs.

Judge TYSON concurs in result in part and dissents in part.

TYSON, Judge, concurring in result in part and dissenting in part.

I concur with the majority's conclusion to remand: (1) the unsubstantiated $40,000 lump sum award for additional findings of fact and for the reasoning to support the specific amount and basis for the award, and (2) the reasons for denying Defendant *any* access to his equitable distribution marital home proceeds. N.C. Gen. Stat. § 50-16.3A(c) (2023). I also concur in the result with the majority's opinion to vacate the award of attorney's fees and remand.

## I.     N. C. Gen. Stat. § 50-16.3A(b)

"The court *shall* exercise its discretion in determining the amount, duration, and manner of payment of alimony[,]" and the court *must* consider "all relevant factors," including, *inter alia*:

> (2) The relative earnings and *earning capacities* of the spouses;
>
> (3) The *ages and the physical, mental, and emotional conditions of the spouses*;
>
> (4) The amount and sources of earned *and unearned income* of both spouses, including, but not limited to, earnings, dividends, and benefits such as medical, retirement, insurance, social security, or others;
>
> (5) *The duration of the marriage*;
>
> . . .
>
> (8) The standard of living of the spouses established during the marriage;
>
> (9) The relative education of the spouses and the time necessary to acquire sufficient education or training to

enable the spouse seeking alimony to find employment to meet his or her reasonable economic needs;

(10) The relative assets and liabilities of the spouses and the relative debt service requirements of the spouses, including legal obligations of support;

. . .

(12) The contribution of a spouse as homemaker;

(13) The *relative needs* of the spouses;

. . .

(15) *Any other factor* relating to the economic circumstances of the parties that the court finds to be just and proper.

N.C. Gen. Stat. § 50-16.3A(b) (2023) (emphasis supplied).

Plaintiff is a college graduate with over seventeen years of teaching experience in Texas. She retains a 4,000 square feet home as separate property in Texas, occupied by her brother, whose "rent" does not cover the mortgage, taxes, insurance, and maintenance expenses. The trial court found Plaintiff used marital funds to pay these expense shortfalls on this home, while exclusively occupying the martial home for over eighteen months, allowing the mortgage to go into default and not paying for utilities she solely consumed. She incurred significant credit card debt in her own name that was considered martial debt.

Plaintiff was born in 1957 and married Defendant in 2008. Their childless marriage continued for approximately eleven years. The record evidence shows

Plaintiff abandoned Defendant and the marital home to return to Texas to care for an ailing relative, while Defendant suffered significant health issues himself, yet he returned to school to gain certification and employment as a nurse.

Uncontradicted evidence and testimony shows, despite the shortage of and full-time teaching positions remaining vacant in the Charlotte metro area, and even substitute teaching jobs available paying $150.00 per day, Plaintiff chose to work part-time at Wal-Mart at $11.00 per hour.

Admitted evidence shows Defendant testified Plaintiff was certified as a teacher and had previously worked at Walmart, but Plaintiff had refused to find employment during the marriage. Defendant also testified his income was negative against expenses each month.

Defendant has no home of his own and rents an apartment. The trial court denied Defendant any deductions from his paycheck as allowed expenses, except mandated taxes and deductions.

The majority's opinion improperly affirms the district court's finding of fact asserting Defendant was in willful contempt for not fully paying post separation support. No evidence supports either his ability or willful refusal to pay, after the trial court ordered his share of funds from the sale of the marital residence to be withheld in trust, yet incredibly finding, as the majority's opinion agrees, he had access to those same funds to pay. While "[c]onsideration must be given to the needs of the dependent spouse, . . . the estates and earnings of both spouses must be

3

considered. It is a question of fairness and justice to all parties." *Kelly v. Kelly*, 167 N.C. App. 437, 441, 606 S.E.2d 364, 368 (2004) (citations and internal quotation marks omitted). I respectfully dissent.

## II.    Amount of Attorney's Fees

North Carolina follows the "American Rule" with regard to awarding attorney's fees against an opposing party. *Ehrenhaus v. Baker*, 243 N.C. App. 17, 23-25, 776 S.E.2d 699. 704-05 (2015). Applying the "American Rule", our Supreme Court held over 50 years ago that each litigant is required to pay its own attorney's fees, unless a statute or express agreement between the parties provides otherwise. *In re King*, 281 N.C. 533, 540, 189 S.E.2d 158, 162 (1972); *Stillwell Enterprises, Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 294, 266 S.E.2d 812, 817-18 (1980) (personal property lease agreement); s*ee also WRI/Raleigh, L.P. v. Shaikh*, 183 N.C. App. 249, 258, 644 S.E.2d 245, 250 (2007) (a commercial real property lease agreement); N.C. Gen Stat. § 42-46(i)(3) (2023) (allows recovery of reasonable attorney's fees in connection with residential rental agreements).

The majority's opinion cites the standard to support an award of attorney's fees in alimony cases. "A spouse is entitled to attorney's fees if that spouse is (1) the dependent spouse, (2) entitled to the underlying relief demanded (e.g. alimony and/or child support), and (3) without sufficient means to defray the costs of litigation." *Barrett v. Barrett*, 140 N.C. App. 369, 374, 536 S.E.2d 642, 646 (2000) (citing *Clark v. Clark*, 301 N.C. 123, 135-36, 271 S.E.2d 58, 67 (1980)).

"Just because one spouse is a dependent spouse does not automatically mean the other spouse is a supporting spouse." *Id.* at 373, 536 S.E.2d at 645 (citation omitted). It is undisputed Plaintiff received over $85,000 in untaxed martial home sales proceeds through Defendant's efforts and expenses and used portions of her equally awarded proceeds to pay her attorney, while Defendant continues to be denied *any* access to his rightful share.

The majority's opinion errs and accepts Plaintiff's testimony as sufficient evidence to approve an award of attorney's fees. *Id.* Here, and unlike the facts in *Barrett*, the trial court failed to receive or admit the attorney's fee affidavit into evidence. *Id.* at 375, 536 S.E.2d at 647. The district court merely relied upon Plaintiff's unsupported testimony regarding invoices for fees she had purportedly received from her withdrawn attorney. From this unsupported testimony, the trial court purported to find and conclude: "That the fees incurred were reasonable and necessary for Plaintiff to present her claim and meet Defendant on an equal basis." Yet, and despite the absence of the required fee affidavit and remand for findings, the majority's opinion, baldly, and without basis, erroneously concludes: "We believe the record supports the amount of fees awarded."

This Court has listed the required findings "in order for the appellate court to determine if the statutory award of attorneys' fees is reasonable[,] the record must contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney." *Cotton v.*

*Stanley*, 94 N.C. App. 367, 369, 380 S.E2d 419, 421 (1989) (citation omitted).

The trial court failed to make any mandated findings: (1) of counsel's rates, as should be set forth in a sworn affidavit; (2) whether those rates were comparable and reasonable for the work done by others in the legal market; (3) the subject matter of the case; (4) the experience of the attorney; (5) whether the specific work done and the amounts charged by counsel was reasonable and necessary; and, (6) whether the fees and costs incurred by Plaintiff were reasonable and necessary for the case. *Id.*

Plaintiff submitted insufficient evidence of all these factors. There was no affidavit submitted or admitted to evidence. The trial court used Plaintiff's unsupported testimony regarding her purported attorney's bills. The district court erred by not making required findings of necessity and reasonableness "as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney." *Id.*

Additional evidence must be presented and received to support these findings and conclusions.

### III. Contempt

The district court improperly held Defendant to be in willful contempt. The majority's opinion errs by affirming this unsupported finding and conclusion.

### A. Standard of Review

The majority's opinion correctly states: "When reviewing a trial court's contempt order, the appellate court is limited to determining whether there is

competent evidence to support the trial court's findings and whether the findings support the conclusions." The majority's opinion impermissibly omits the complete standard of review. This Court "review[s] the trial court's conclusions of law in a civil contempt order *de novo*." *Walter v. Walter*, 279 N.C. App. 61, 66, 864 S.E.2d 534, 537 (2021) (citation omitted).

**B. Analysis**

Our General Statutes permit a trial court to hold a party in civil contempt if the "noncompliance by the person to whom the [civil contempt] order is directed is *willful*." N.C. Gen. Stat. § 5A-21(a)(2a) (2023) (emphasis supplied). "With respect to contempt, willfulness connotes knowledge of, and stubborn resistance to, a court order." *Blevins v. Welch*, 137 N.C. App. 98, 103, 527 S.E.2d 667, 671 (2000) (citation omitted). "Willfulness in matters of this kind involve[ ] more than deliberation or conscious choice; it also imports a bad faith disregard for authority and the law." *Forte v. Forte*, 65 N.C. App. 615, 616, 309 S.E.2d 729, 730 (1983) (citations omitted).

Defendant challenges the following finding of fact: "That Defendant is in willful contempt of the Court's Post-Separation Order as he had the means and ability to comply with the order but has willfully refused to do so." The majority's opinion then affirms the willful contempt because "the unchallenged findings of fact show that [D]efendant was employed as a nurse when the parties separated, he will continue to be employed as a nurse, he has a net income of $4,100.79 per month, and he received over $80,000.00 in equitable distribution proceedings."

The undisputed evidence and findings show Defendant initially made the ordered post separation support payments to Plaintiff. Also, Plaintiff had sole access and exclusive use of the marital home and failed to make mortgage payments or to pay utilities for over eighteen months, until the lender threatened to foreclose after expiration of a COVID-19 forbearance.

Defendant had initially made the mortgage payments, while Plaintiff was in exclusive possession. Defendant's motion to sell the martial residence to protect over $170,000.00 in accrued equity from foreclosure was continued three times on Plaintiff's counsel's motions for continuance, opposed by Defendant. After these delays, Plaintiff's counsel then abruptly moved and was allowed to withdraw the same day by the district court.

Plaintiff was provided immediate access to all of her one-half equitable distribution share of the martial residence sale's proceeds, accrued through Defendant's motion and efforts. The trial court ordered the entirety of Defendant's one-half share of equitable distribution proceeds held in trust while Plaintiff's continued motions were pending in the district court. The evidence shows and the district court further found: "That given the aforementioned figures, Defendant has minimal money with which to pay alimony on a monthly basis."

Defendant did not have the present means or ability to pay, and his partial failures to pay cannot be construed as willful. N.C. Gen. Stat. § 5A-21(a)(2a). "Willfulness constitutes: (1) an ability to comply with the court order; and (2) a

8

deliberate and intentional failure to do so." *Watson v. Watson*, 187 N.C. App. 55, 66, 652 S.E.2d 310, 318 (2007) (citation omitted); *Blevins* 137 N.C. App. at 103, 527 S.E.2d at 671 ("With respect to contempt, willfulness connotes knowledge of, and stubborn resistance to, a court order."). "Willfulness . . . imports a bad faith disregard for authority and the law." *Forte*, 65 N.C. App. at 616, 309 S.E.2d at 730. The willful civil contempt finding is unsupported, erroneous, and properly reversed. *Id.*

## IV. Conclusion

I concur in the result to vacate and remand the attorney's fees award. Plaintiff's unsupported testimony about her attorney's bills, who had previously sought to withdraw representation only to remain on the case, and larded attorney's fees does not provide sufficient evidence to support the award in the absence of an affidavit and supported findings. *Cotton*, 94 N.C. App. at 369, 380 S.E2d at 421.

The district court's holding Defendant in willful contempt is wholly unsupported, properly vacated, and remanded to the trial court in the face of its ordered denial of Defendant's access to any of his own funds, and its other supported findings holding "Defendant has minimal money with which to pay alimony on a monthly basis." *Blevins*, 137 N.C. App. at 103, 527 S.E.2d at 671; *Forte,* 65 N.C. App. at 616, 309 S.E.2d at 730. I respectfully dissent.